Bergan, J.
Defendant has been convicted of three charges of kidnapping; one of attempted rape, first degree; three charges of assault, second degree, and one charge of attempted assault, second degree. He was sentenced to 40 years to life on one of the kidnapping counts; and to lesser, concurrent terms, on the other charges.
A similarity exists between the crimes of which he has been convicted, but each involved different persons and entirely different acts and were separated by rather long periods of time from November, 1963 to July, 1964. The indictment charged the crimes separately as different acts, without pleading either they were “connected together ” or that they were part of a common scheme or plan (Code Crim. Pro., § 279).
Defendant was a pharmacist and travel agent in Manhattan. On three occasions, it has been established, he hired young women to work in his travel agency. Each was induced by defendant to agree to go to a business party or promotional social affair, two of them to be in Long Island.
Before starting on these trips defendant induced each of the young women to take pills which he had told them were ‘ ‘ nail-hardening pills ” but which, in fact contained a combination of barbiturates which defendant had prepared. The women wore induced to take the pills on the representation their reaction would be helpful to defendant’s business.
*270 The type of barbiturates which, had been given to each of the young1 women would tend within 20 to 30 minutes to put one to sleep; to blunt one’s awareness of environment; to induce light-headedness and dizziness; and to make one unstable from the standpoint of muscular co-ordination.
Expert opinion disclosed the drugs induced a feeling of inability to resist or use full muscular strength and such a person would be “ unable rationally and willfully to cope with a situation ’ ’.
It has been established that defendant drove the three young women, in this state of physical and mental disability, to a motel in Queens where in one instance, the jury has found, he attempted sexual intercourse and in two other instances made sexual advances short of attempted intercourse. These acts form the bases for the convictions of attempted rape and of assault. The proof is that following these acts, the women were returned to their homes by the defendant.
The attempted assault charge is based on giving pills to a policewoman assigned to investigate the case with the suggestion she consume them. Having obtained them, the policewoman ran out of the store. Defendant’s arrest followed at once. These pills were analyzed and their contents established on the trial. The physical reactions of the other women to the pills they had taken were medically consistent with the effect of the pills seized by the policewoman as shown by analysis.
The asportation of the three young women from Manhattan to Queens, aided in part, at least, by the drug, and the physical domination of them in a motel made possible by the drug, comes literally within the terms of the kidnapping statute (Penal Law, § 1250, subd. 1, as it read in 1964).
But the direction of the criminal law has been to limit the scope of the kidnapping statute, with its very substantially more severe penal consequences, to true kidnapping situations and not to apply it to crimes which are essentially robbery, rape or assault and in which some confinement or asportation occurs as a subsidiary incident.
Asportation in the present case, for example, played no significant role in the crimes. Had defendant drugged his victims and taken them to a room in back of the pharmacy and there attempted to rape them or make sexual advances, the crimes *271 would appear more clearly to "he attempted rape or assault and essentially something other than kidpnapping.
The confinement resulting from the effect of the drug would, however, in that situation also fall within the literal terms of the kidnapping statute. One might suppose that taking his drugged victims in daylight to a public motel, thus inviting the possible risk of inquiry, was a less certain way of achieving his purpose than taking them somewhere in the pharmacy premises.
The kidnapping question in this ease is largely answered by People v. Levy (15 N Y 2d 159), which expressly overruled People v. Florio (301 N. Y. 46). The latter case was not unlike the present one except there force was used rather than drugs and rape was consummated rather than attempted after the victim had been taken from Manhattan to Queens.
It was held in Levy that under the kidnapping statute then in effect (Penal Law, former § 1250), which also; was in effect for the present crimes, the detention or asportation of a victim for a relatively short time as an incident to robbery should not normally be prosecuted as- kidnapping, (See, also, Chatwin v. United States, 326 U. S. 455.)
The Legislature has undertaken to bring more certainty than the court was able to achieve in Levy, to the problem of when confinement and restraint are significant enough by themselves to warrant a kidnapping prosecution. This is achieved by prescribing a definite time period of detention in eases other than the classic crime of kidnapping for ransom and its equivalents (Revised Penal Law, § 135.25, L. 1965, ch, 1030, eff. Sept. 1, 1967).
In such other situations than classic kidnapping, e.g., the restraint of an abducted person to violate or abuse him sexually, detention for more than 12 hours is treated as kidnapping in the first degree (§ 135.25, subd. 2, par. [b]).
But the rule laid down in Levy and not the new statute effective next September governs this present case. Although two of the defendant’s victims seem to have been with defendant in total time long enough to meet the test of the new statute if it were applicable, this question was not of significance at the trial and was not factually resolved. In any case, it is uncertain, both from the viewpoint of the time when the drug *272 took effect and when it wore off as to the actual period in which it was an instrument of restraint.
The conviction for kidnapping, therefore, should be reversed and the kidnapping counts of the indictment dismissed.
Moreover, there should be a new trial as to the attempted rape and assault convictions because of the prejudicial and inflammatory comments of the prosecutor both during the trial and in summation.
Casting his language in negative rhetorical form the prosecutor went to excessive lengths in arguing to the jury that they were “ not here to determine ” if defendant’s acts “ were damnable, diabolical, destructive, death dealing” and whether the defense ‘ ‘ is born of desperation and despair, filled with deceit, devoid of decency, devoid of truth, foul and vile ”. He continued : 1 ‘ And those admissions, so to speak, are the ribbon on the box which establishes the guilt of this defendant of damnable diabolical acts.”
At another point in summation, the prosecutor argued the victims had aided the police in investigation “ so that the community could be safeguarded, so justice could be done, and so that their cry could be heard by a jury in this court as they said Avenge me, avenge me ’ ’.
Personal attack by the prosecutor on counsel for defense, Herbert Zelenko, was carried to undue lengths. In summation, the prosecutor referred to “ the great defender of civil liberties Herbert Zelenko ”. At another point in summation he argued that Mr. Zelenko had used time and time again the term ‘ ‘ civil rights and civil liberties” and added “How he tossed that phrase so loosely over his tongue, attempting to appeal to the prejudice of each and every one of you ”.
Repeatedly in his summation the prosecutor referred to defense counsel as “ This man, this defender of civil liberties ” and “ the man who speaks about civil liberties ” and “ the great defender of civil liberties, Herbert Zelenko ”. At another point in summation he asked whether the jury rememberd the ‘ ‘ way ’ ’ in which defense counsel had asked a question, and commented: ‘ ‘ It came out foul. ’ ’
The background of these attacks on defense counsel before the jury is to be seen in some comments by the prosecutor on the record before the Judge, not before the jury, which, although *273 not prejudical in themselves as to the jury, suggest the attacks were more than heated advocacy.
At one such point the prosecutor said to the court: “ I state for the record that Mr. Zelenko is a dishonest man.” Mr. Zelenko, having recently been defeated for re-election to Congress, the prosecutor at another point in the record said to the Judge: “ I do not want to comment on what I think of defense counsel at this moment. The electorate has already commented. ’ ’ These attacks on defense counsel exceeded fair limits of advocacy and and were prejudicial to defendant as a matter of law.
Since there is to be a new trial, the jury should be instructed that the crimes charged, although properly joined in the same indictment under section 279 of the Code of Criminal Procedure, must, on this record, be separately considered each on its own merits.
The judgment should be reversed by dismissing the charges of kidnapping and by directing a new trial as to the charges of attempted rape and assault.