[Crim. No. 18527. Second Dist., Div. Five. May 27, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
HOWARD EDWARD BEAUMASTER et al., Defendants and Appellants.

## COUNSEL

Kathleen J. Kirkland and Alan Douglas, under appointments by the Court of Appeal, and Douglas, Pendleton & Applbaum for Defendants and Appellants.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Allan J. Besbris, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**STEPHENS, J.**—Defendant Chapman (also known as Moore) was charged with nine felony counts. Defendant Beaumaster was charged with the same first seven felony counts as Chapman, and was also charged with two prior felony convictions. The counts are as follows, with each count except V, VII and IX also alleging that defendants committed the respective offense while armed with a .38 caliber revolver (a violation of Pen. Code, §§ 3024 and 12022):

Count I: Kidnaping for the purpose of robbery (a violation of Pen. Code, § 209); additionally alleging that the victim suffered bodily harm;

Count II: Oral copulation (a violation of Pen. Code, § 288a);

Count III: Robbery (a violation of Pen. Code, § 211);

Count IV: Assault with intent to commit murder (a violation of Pen. Code, § 217);

Count V: Assault with a deadly weapon upon a peace officer (a violation of Pen. Code, § 245, subd. (b));

Count VI: Assault with intent to commit murder (a violation of Pen. Code, § 217);

Count VII: Assault with a deadly weapon upon a peace officer (a violation of Pen. Code, § 245, subd. (b));

Count VIII: Assault with intent to commit murder (a violation of Pen. Code, § 217);

Count IX: Assault with a deadly weapon upon a peace officer (a violation of Pen. Code, § 245, subd. (b)).

Defendants pleaded not guilty, and they personally and all counsel waived trial by jury. Beaumaster denied the prior felony convictions, and his motion under Penal Code section 995 was denied. Defendants were found guilty as charged in counts I,[1] II, III, IV, and VI, and not guilty of the other counts. Defendants were found to be armed at the time of commission of the offenses and under circumstances to bring them within Penal Code sections 3024 and 12022 for counts II, IV and VI, but not within those sections for counts I and III. Chapman was found to be armed when arrested, while Beaumaster was found not to be armed when arrested. One of Beaumaster's prior felony convictions was found to be true. His motion for a new trial was denied. Probation was denied both defendants. Counts II, III, IV and VI were ordered merged into count I. Defendants were sentenced to state prison for the term of their natural lives, with possibility of parole, on count I, and for the term prescribed by law as to the merged counts. Beaumaster's sentence was ordered to run concurrently with any existing federal sentence. Chapman's sentence was ordered to run concurrently with any sentence theretofore imposed by any other court.

On the evening of May 27, 1969, Mrs. J. went to a laundromat near her home to do her laundry. While she was in the laundromat and alone, Chapman walked in, looked around, and picked up Mrs. J.'s purse from a table where she had placed it. He asked if it was hers. She told him it was, and Chapman asked her to come with him. She hesitated, and Chapman pulled out a gun and pointed it at her, causing her to fear for her life. He directed Mrs. J. to a vehicle parked directly in front of the laundromat. When she asked him why he was taking her, he said, "Be quiet, or I'll blow your head off." Mrs. J. then got in the vehicle, which

---

[1]The court at first found that the victim had suffered bodily harm, but later retracted this part of its finding.

had the motor running, and sat between the driver (Beaumaster) and Chapman. They drove onto an adjacent freeway, and Mrs. J. asked them what they wanted. Chapman's response was, "Don't worry, we are not going to hurt you. We just want your money." Chapman went through her purse. Beaumaster asked Mrs. J. how much money she had and if she had any rings or jewelry of value in her purse, and she told him she only had five dollars. Beaumaster became angry and said that because she only had five dollars she would have to go down on them both. Chapman handed Beaumaster the gun, and tied Mrs. J.'s hands behind her back; Beaumaster, with the gun at her head, forced Mrs. J. to commit oral copulation.[2] While this was going on, Chapman had his hand up her dress and was fondling and caressing her thighs. Beaumaster later told her to straighten up, and handed the gun to Chapman. When she straightened up, Mrs. J. observed the reflection of red flashing lights. The car stopped, and Los Angeles City Police Officer Proctor approached the car. He ordered Beaumaster out of the car. When Beaumaster got out, Officer Proctor noticed that Beaumaster's pants were open. While Officer Proctor was talking to Beaumaster, Los Angeles Police Sergeant Conver arrived, in answer to Proctor's prior call for cover. Conver walked to the passenger side of the vehicle and asked Chapman to get out. Chapman got out, pointing his revolver towards Officer Conver's face, and said, "Don't move, don't move!" Conver ducked to the right and ran back to his vehicle, shouting to Proctor, "Look out, Vance, he has a gun." Chapman fired the first shot, Proctor then drew his revolver and fired four shots in Chapman's direction, and ducked behind his vehicle. Chapman was standing at the open passenger door when Proctor fired. An exchange of gunfire ensued. Mrs. J. managed to get out of the car just at the time of the exchange of shots, and she was struck in the neck and chest. Chapman got in the car and drove off. Mrs. J. was on her knees, in the street, with her hands tied behind her back when Chapman escaped. He was later apprehended in the manner which gave rise to the two counts (VIII and IX) of which he was found not guilty. Beaumaster was lying on the ground during the firing, and remained there until he was handcuffed.

Both defendants appeal from the judgment of conviction. Beaumaster contends: (1) there is insufficient evidence of conspiracy or aiding and abetting to sustain his conviction for assault with intent to commit murder; (2) the evidence is insufficient to sustain his conviction of kidnaping for the purpose of robbery; (3) he could not be convicted of both kidnaping and oral copulation since they were both a part of the same course of

---

[2]These acts all transpired while the car was being driven. Mrs. J was forced into the car near Magnolia and Laurel Canyon, and defendants were stopped near Ben and Elkwood.

conduct. Chapman contends that: (1) he did not receive a fair trial because the trial judge did not disqualify himself, as was required by his having been involved in defendant's change of plea from guilty to not guilty before trial; (2) his counsel was incompetent in that he failed to have the court disqualify itself, thereby reducing his trial to a farce and a sham.

Beaumaster's first two contentions are based on insufficiency of the evidence. ■ An appellate court must view the evidence in the light most favorable to the prevailing party, and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Reilly,* 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]; *People* v. *Mosher,* 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) All that is necessary is that the circumstances reasonably justify the findings by the trier of fact. Even if the reviewing court is of the opinion that the circumstances might also be reasonably reconciled with a contrary finding, this does not warrant a reversal of the judgment. (*People* v. *Reilly, supra; People* v. *Hillery,* 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Robillard,* 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086].) ■ The appellate court must determine whether a trier of fact could have reasonably found that the prosecution sustained its burden of proving defendant guilty beyond a reasonable doubt. (*People* v. *Reilly, supra; People* v. *Redmond, supra; People* v. *Bassett,* 69 Cal.2d 122, 139 [70 Cal.Rptr. 193, 443 P.2d 777].) ■ Beaumaster claims that he withdrew from any conspiracy by submitting to a search and by his general cooperation with the police when stopped. ■ A defendant's failure to continue previously active participation in a conspiracy is not enough to constitute withdrawal; there must be an affirmative and bona fide rejection or repudiation of the conspiracy, communicated to the co-conspirator. (*People* v. *Crosby,* 58 Cal.2d 713, 730 [25 Cal.Rptr. 847, 375 P.2d 839]; *People* v. *Moran,* 166 Cal.App.2d 410, 415-416 [333 P.2d 243]; see also *Hyde* v. *United States,* 225 U.S. 347, 369 [56 L.Ed. 1114, 1127, 32 S.Ct. 793].) ■ A failure to complete a crime because of threatened arrest or the appearance of the police is not such a free and voluntary act as to constitute an abandonment. (*People* v. *Walker,* 33 Cal.2d 250, 258 [201 P.2d 6]; *People* v. *Corkery,* 134 Cal.App. 294, 297 [25 P.2d 257].) ■ Each member of the conspiracy is liable as such for the acts of any of the others in carrying out the common purpose, i.e., all acts within the reasonable and probable consequences of the common unlawful design. Liability extends to acts unintended or even actually forbidden by a co-conspirator. (See *People* v. *Smith,* 63 Cal.2d 779, 794 [48 Cal.Rptr. 382, 409 P.2d 222].)

■ Defendant did not communicate any withdrawal to his partner in crime. He was apprehended by the police, and his "abandonment" (if it can be so classed) was not voluntary. He, in fact, handed the gun to Chapman, and the probable consequences of this act are chargeable to Beaumaster. We cannot find that there was insufficient evidence to sustain Beaumaster's conviction of assault with intent to commit murder.[3]

■ Beaumaster's second contention is that it was unreasonable to find that the kidnaping was for the purpose of robbery. Defendant argues that the robbery was completed before Mrs. J. was forced to leave the laundromat, and therefore the kidnaping was not for the purpose of robbery. While it is true that Chapman had the victim's purse in his possession at the time the abduction took place, it was Beaumaster who made the inquiry of the victim as to how much money she had and asked about the rings and jewelry. This was at the inception of the asportation. ■ Robbery, unlike burglary, is not confined to a fixed locus, but is frequently spread over a considerable distance and varying periods of time. (*People* v. *Ketchel,* 59 Cal.2d 503, 523 [30 Cal.Rptr. 538, 381 P.2d 394]; *People* v. *Jackson,* 273 Cal.App.2d 248, 253 [78 Cal.Rptr.20].) It is settled that the crime of robbery is not confined to the act of taking property from victims. The nature of the crime also is such that a robber's escape with his loot is just as important to the execution of the crime as obtaining possession of the loot. Thus, the crime of robbery is not complete until the robber has won his way to a place of temporary safety. (*People* v. *Carroll,* 1 Cal.3d 581, 585 [83 Cal.Rptr. 176, 463 P.2d 400]; *People* v. *Anderson,* 64 Cal.2d 633, 638 [51 Cal.Rptr. 238, 414 P.2d 366]; *People* v. *Ketchel, supra,* at p. 524.)

Before we can reach a conclusion on the conviction of the charge of kidnaping for the purpose of robbery, we must first decide if the critera established in *People* v. *Daniels,* 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225] are applicable to this case. *Daniels* involved a robbery, rape, and an act which could technically be defined as kidnaping.[4] The California Supreme Court had previously construed the kidnaping statute in *Cotton* v. *Superior Court,* 56 Cal.2d 459, 465 [15 Cal.Rptr. 65, 364 P.2d 241] to mean that the asportation element of kidnaping was some-

---

[3]We do not deem it necessary to discuss defendant's liability on the theory of aiding and abetting, although we believe there was sufficient evidence to sustain a conviction on this theory also. (See *People* v. *Durham,* 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198].)

[4]Penal Code section 207, in pertinent part, defines kidnaping as follows: "'Every person who forcibly steals, takes or arrests any person in this State and carries him into another country, state, or county or into another part of the same county . . . is guilty of kidnaping."

thing more than an incidental movement involved in the underlying crime. The court in *Daniels,* relying on *Cotton, supra,* the New York case of *People* v. *Levy,* 15 N.Y.2d 159 [256 N.Y.S.2d 793, 204 N.E.2d 842], and the Model Penal Code (1962) section 212.1,[5] concluded that the California Legislature's intent in amending the aggravated kidnaping statute (Pen. Code, § 209)[6] in 1951 was to exclude "standstill robberies" and those in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself. These criteria were further clarified in *People* v. *Timmons,* 4 Cal.3d 411, 414 [93 Cal.Rptr. 736, 482 P.2d 648], where the court said that in *Daniels,* it was referring to an increase in the risk that the victim may suffer significant physical injuries over and above those to which a victim of the underlying crime is normally exposed. What the Supreme Court has in essence said in these cases is that the technical act of asportation merges into the underlying crime if the asportation element was merely incidental to the commission of the robbery, rape, assault, etc., and did not substantially increase that risk of harm to the victim normally inherent in the underlying crime. The underlying crime then becomes the dominant crime, and the technical "kidnaping" does not amount to a violation of either statutory section, 207, or 209 of the Penal Code. (See *People* v. *Mutch,* 4 Cal.3d 389, 396 [93 Cal.Rptr. 721, 482 P.2d 633]; *People* v. *Ballard,* 1 Cal.App.3d 602, 606 [81 Cal.Rptr. 742].) In summary, the combined results of *Cotton, Levy,*[7] *Daniels, Mutch, Timmons,* and their progeny, approvingly approach the definition contained in section 212.1 of the Model Penal Code.[8] The asportation required to constitute a kid-

---

[5]This section, in pertinent part, provides: "A person is guilty of kidnaping if he unlawfully removes another from his place of residence or business or a substantial distance from the vicinity where he is found or if he unlawfully confines another for a substantial period in a place of isolation. . . ."

[6]This section, as amended, in pertinent part states: "Any person who . . . kidnaps or carries away any individual to commit robbery, or any person who aids or abets any such act, is guilty of a felony and upon conviction thereof shall suffer death or shall be punished by imprisonment in the state prison for life without possibility of parole, at the discretion of the jury trying the same, in cases in which the person or persons subjected to such kidnaping suffers or suffer bodily harm or shall be punished by imprisonment in the state prison for life with possibility of parole in cases where such person or persons do not suffer bodily harm."

[7]The New York court in *People* v. *Miles,* 23 N.Y.2d 527 [297 N.Y.S.2d 913, 245 N.E.2d 688] suggests a questioning of the factual determination in *People* v. *Lombardi,* 20 N.Y.2d 266 [282 N.Y.S.2d 519, 229 N.E.2d 206] (cited in *Daniels*), although it has followed the legal principles established therein. In *Miles,* the court appears to limit the factual determination in *Lombardi* while restating the doctrine of *Levy.*

[8]In *Daniels, supra* (at pp. 1137-1139), the court refers to this section in most complimentary terms.

naping must be more than movements within the boundaries of the situs of the motivating crime. The movement must extend a substantial distance beyond the vicinity of the residence, business, or mobile situs (as in *Timmons*) of the motivating crime.

Whether a defendant is a "kidnaper" under *Daniels, Mutch,* and *Timmons* will normally be a question of fact to be determined in light of the totality of the circumstances of the particular case. (See *People* v. *Mutch, supra,* at p. 400, Justice Sullivan's concurring opinion; see also *People* v. *Moreland,* 5 Cal.App.3d 588, 594 [85 Cal.Rptr. 215]; *People* v. *Chavez,* 4 Cal.App.3d 832, 839 [84 Cal.Rptr. 783].) As stated in *People* v. *Miles, supra,* 245 N.E.2d 688, 695), this determination will for all practical purposes have to be made in almost all cases involving the taking and carrying away of a person, since it is rare that such taking is an end in itself. Such acts are almost invariably connected with another intended crime. The factual determination of whether there is a kidnaping cannot be made from time and distance alone. Though a reasonably brief or minor movement for the purpose of facilitating the commission of a robbery is incidental thereto (*People* v. *Timmons, supra; People* v. *Williams,* 2 Cal.3d 894, 902 [88 Cal.Rptr. 208, 471 P.2d 1008]; *People* v. *Moore,* 4 Cal.App.3d 668, 671 [84 Cal.Rptr. 771]), the true test in each case is not mere distance, or that the victim was moved in some combination of indoor-outdoor movement, but whether the movement substantially increased the risk of harm beyond that inherent in the underlying crime itself (*People* v. *Timmons, supra,* at p. 415; *People* v. *Daniels, supra*) and was therefore not merely servient to the dominant crime.

In the instant case, the determination of whether defendants' conduct is proscribed by Penal Code section 209 becomes an evaluation process conducted in light of the facts and prior decisions. ■ This process of evaluation requires that the trial court look at the actual events (1) to see if the asportation of the victim was done merely to effecuate or facilitate the commission of the dominant crime without a substantial increase in the risk of harm (*People* v. *Daniels, supra,* at pp. 1130-1131; *People* v. *Moore, supra,* at p. 671); (2) to examine the intent and objective of the defendant in effecting the movement of his victim (*People* v. *Dacy,* 5 Cal. App.3d 216, 222-223 [85 Cal.Rptr. 57]); and (3) to see if the movement of the victim was a natural and servient part of the underlying crime (see *People* v. *Schafer,* 4 Cal.App.3d 554, 560-561 [84 Cal.Rptr. 464]). ■ These are normally questions of fact for the trial court, and in the instant case we conclude that the circumstances reasonably justify the trial court's finding that the transporting of Mrs. J. over a considerable distance on the freeway, transpiring over an extended time, was not incidental to the

initial crime of robbery. The robbery could well have been completed in the laundromat had defendants so desired, but they chose to forcibly take the victim with them while they examined the contents of her purse and questioned her about possession of other valuables. Defendants' conduct also fails to pass the third principle above set forth, as the movement was not a mere part of the crime of robbery. The evidence was adequate to sustain the conviction of kidnaping for the purpose of robbery. (For strikingly similar facts and a like holding respecting the conclusion that *kidnaping* had in fact been committed, see *People* v. *Smith*, 223 Cal. App.2d 225 [35 Cal.Rptr. 719].)

As has been reasoned in *People* v. *Mutch, supra*, 4 Cal.3d 389, 396 and *People* v. *Ballard, supra*, 1 Cal.App.3d 602, 605, where the offense is that of robbery (though the victim was caused to be moved to a location different than where he was at the time of the initial confrontation of perpetrator and victim), there was committed but the one crime. *Timmons, supra* (at p. 415), recognized that under some circumstances that which was intended to be robbery (though with incidental movement of the victim) could result in the crime of kidnaping where there has resulted an increase in the risk of harm. The Legislature has seen fit under such circumstances to designate such a kidnaping within a section of the Penal Code (§ 209) distinct from that (§ 207) of kidnaping without such motivation, and, so far as the punishment prescribed, treats such crime as a far more aggravated transgression of the law. (Pen. Code, § 208[9] provides the punishment for the crime of "simple" kidnaping.) By such legislative declaration, we note that there is recognition that the lesser of the two crimes (robbery) is not a necessarily included offense in the greater (kidnaping for the purpose of robbery). In fact, a kidnaping for the purpose of robbery may be committed even when the robbery itself fails, and robbery may be committed without moving the victim. It is the dominant crime of kidnaping, albeit of the aggravated type condemned in Penal Code section 209, which is the prohibited act, and only made more severely punishable because of the motive which gave rise thereto. The reasoning of the California Supreme Court in *People* v. *Tribble* (1971) 4 Cal.3d 826 [94 Cal.Rptr. 613, 484 P.2d 964] is applicable here. The court in *Tribble* states: "A person could not kidnap and carry away his victim to commit robbery if the intent to rob was not formed until after the kidnaping had occurred." The court went on to quote from *People* v. *Smith*, 223 Cal.App. 2d 225, 234 [35 Cal.Rptr. 719]: "[K]idnapping without intent to rob constitutes kidnapping but not kidnapping for purpose of robbery; and a robbery during a kidnapping where the intent was formed after the asportation

---

[9]Penal Code section 208: "Kidnaping is punishable by imprisonment in the state prison not less than one nor more than twenty-five years."

is a robbery and not a kidnapping for the purpose of robbery." Thus, the commission of a robbery, the motivating factor, during a *kidnaping for the purpose of robbery,* the dominant crime, does not reduce or nullify the greater crime of aggravated kidnaping.

The conviction and sentencing for both the robbery and the kidnaping for purposes of robbery, though two separate and distinct crimes under the circumstances of this case (see *In re Wright,* 65 Cal.2d 650 [56 Cal.Rptr. 110, 422 P.2d 998], wherein both offenses were found to have been committed), leaves remaining the question of prohibited double punishment. Penal Code section 654 forbids multiple punishment where the two crimes were part of an indivisible course of conduct directed to the objective of committing the lesser of the crimes (*In re Wright, supra,* at p. 652). The fact that defendants were successful in their robbery may not increase the punishment incident to the major offense of kidnaping for the purpose of robbery. Where such prohibited sentencing exists, the appropriate procedure at the appellate level is to eliminate the effect of judgment as to the less severely punishable offense insofar as the penalty alone is concerned. (*In re Wright, supra,* at p. 656; *People* v. *McFarland,* 58 Cal.2d 748, 763 [26 Cal.Rptr. 473, 376 P.2d 449].)

Beaumaster's final contention is that the kidnaping and the sexual assault were a part of the same course of conduct and he should therefore have been convicted of only one offense. We cannot agree. We have determined that the conviction for kidnaping for the purpose of robbery must be affirmed; certainly, the added development of the sexual violation is not fused into that crime. To determine whether several criminal acts constitute a single course of conduct, the court must look to the intent and objective of the defendant in committing the acts. (*In re Ward,* 64 Cal.2d 672, 676 [51 Cal.Rptr. 272, 414 P.2d 400], cert. den. 385 U.S. 923 [17 L.Ed.2d 147, 87 S.Ct. 238]; *Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839], cert. den. 365 U.S. 823 [5 L.Ed.2d 700, 81 S.Ct. 708]; *People* v. *Ferguson,* 1 Cal.App.3d 68, 74 [81 Cal.Rptr. 418].) It is evident that defendants' course of conduct is divisible, thereby giving rise to more than one act within the meaning of Penal Code section 654.[10] Defendants' original intent and objective first were robbery, then kidnaping for the purpose of robbery. It was only after defendants discovered that the victim had but $5 that the violation of Penal Code section 288a was conceived. The apparent intent and objective were not the

[10]Penal Code section 654, in pertinent part, provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. . . ."

same as when the initial crime was that of robbery. The conviction and sentencing for the kidnaping for the purpose of robbery and that of the violation of Penal Code section 288a as separate and distinct offenses, unassociated with a continuous course of conduct, were proper.

In defendant *Beaumaster's* case, the judgment of conviction is affirmed as to counts I, II, III, IV and VI, but the sentence as to count III is eliminated.

 Defendant Chapman contends that the trial judge should have been disqualified because the judge was present when Chapman tried to enter a guilty plea. On this fact, defendant claims that the judge was prejudiced and could not be impartial at the trial. At the outset we note that unless a timely objection is made to the assignment of the trial judge or to his hearing the case, the issue cannot be raised for the first time on appeal. (See *People* v. *Garn,* 246 Cal.App.2d 482, 484 [54 Cal.Rptr. 867]; *People* v. *Miller,* 245 Cal.App.2d 112, 154-155 [53 Cal.Rptr. 720]; *People* v. *Pratt,* 205 Cal.App.2d 838, 841-846 [23 Cal.Rptr. 469].) Although defendant is afforded a peremptory challenge of a judge by Code of Civil Procedure section 170.6, there is no presumption in the law that the trial judge is prejudiced. A trial judge hears many items during the course of a trial which are inadmissible, and he is called upon to rule on the admissibility of numerous evidentiary matters. The fact that he has heard these things does not mean that he cannot divorce them from his mind. To justify a mistrial, or a new trial, or a reversal on appeal, an affirmative showing of prejudice is required. (See *Gimbel* v. *Laramie,* 181 Cal.App.2d 77, 84 [5 Cal.Rptr. 88]; see also *People* v. *Moller,* 177 Cal.App.2d 379, 382 [2 Cal. Rptr. 223].)

 Chapman next contends that his counsel was incompetent because he did not move to disqualify the judge on the grounds discussed *supra,* and therefore he did not receive a fair trial. There are, no doubt, an infinite number of reasons why counsel would not avail themselves of the opportunity to disqualify a judge. The failure to do so is within the competence of counsel, and does not show ineffective counsel. Defendant cites several cases (i.e., *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]) that establish the criteria that the trial must be reduced to a farce or a sham before there can be a finding of ineffective counsel. We are hard pressed to see how the trial was reduced to a farce or a sham. Counsel most ably argued for defendant and, indeed, was successful in obtaining acquittals on counts V, VII, VIII and IX. In addition, counsel convinced the trial judge to retract the finding of bodily harm associated with count I so that defendant could be eligible for parole. Defendant cites *People* v. *Wade,* 150 Cal.App.2d 281, 285 [309 P.2d 841], which involved

an alleged statement by the judge to the public defender during the course of the case that he had already decided appellant was guilty. There, the appellate court stated that "it was appellant's duty at once to file an affidavit of prejudice (Code Civ. Proc., § 170, subd. 5). Also, an affidavit of prejudice must state facts showing that prejudice existed in the mind of the judge." That case is clearly distinguishable from the instant case by the very fact that there was obvious overt conduct by the trial judge. Here, we are asked to presume prejudice from the normal occurrences during trial. This we cannot do. Defendant's contentions are without merit.

The analyses and conclusion reached *supra* as to defendant Beaumaster are equally applicable to defendant Chapman with respect to the application of Penal Code section 654.

In defendant *Chapman's* case, the judgment of conviction is affirmed as to counts I, II, III, IV, and VI, but the sentence as to count III is eliminated.

Kaus, P. J., and Reppy, J., concurred.