■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT STUCKEY, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered October 22, 1975, convicting him of robbery in the first degree and kidnapping in the second degree, upon a jury verdict, and imposing sentence. Judgment affirmed. The circumstances of this case present clearly separate crimes of robbery and kidnapping (see *People v Black,* 18 AD2d 719; cf. *People v Levy,* 15 NY2d 159, 165, cert den 381 US 938). Although the period of confinement was not very long, it is impossible to know how long it would have lasted had Mrs. Justice not become hysterical, thereby causing appellant to attempt, unsuccessfully, to drive the car in which they were riding. *People v Palmer* (50 AD2d 839) is clearly distinguishable. In *Palmer* the defendant forced two people to drive him from Franklin Square, Nassau County, to Manhattan. He robbed them prior to exiting from their car. This court affirmed his conviction of robbery but reversed his conviction of kidnapping. That result was entirely consistent with a series of cases "intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime *could not have been committed* without such acts" (see *People v Cassidy,* 40 NY2d 763, 767 [emphasis supplied]). Latham, Acting P. J., Margett and Suozzi, JJ., concur; Mollen, J., concurs in the affirmance of the conviction of robbery in the first degree, but otherwise dissents and votes to reverse the conviction of kidnapping in the second degree, and the sentence imposed thereon, and to dismiss the said count of the indictment, with the following memorandum: The sole issue which is presented for determination with regard to the conviction of the crime of kidnapping in the second degree is whether the merger doctrine pertains in circumstances where a brief asportation occurs immediately after the taking of the proceeds of a robbery. At the trial the complainant testified that he resided in an apartment building located at 272 Pennsylvania Avenue, in the County of Kings; that on October 23, 1974 he arrived home after work at approximately 12:05 A.M.; that he drove into his parking space, parked his automobile and then proceeded to walk towards the side entrance of his building; that as he did so defendant came out from behind another vehicle and began to follow him; that defendant made a threatening remark to him, whereupon he began to run; that defendant pursued him, caught him and pressed a knife to his neck; and that thereafter defendant forced him into the lobby of the building. Inside the building defendant removed the complainant's ring, watch and all of the money from the complainant's wallet. The complainant further testified that he and defendant were in the lobby of the apartment house for approximately five minutes. While they were still in the lobby, the complainant's wife entered. Defendant stated, "You are going to have to get me out of this." Defendant then walked both the complainant and his wife to their automobile, holding the knife to the complainant's chest. The three entered the vehicle and drove away, with the complainant's wife driving. As they were riding, defendant told them that he had six or seven children whom he had to feed and that that was the reason for his actions. The complainant's wife began to cry, whereupon defendant told her to move over and he started to drive. However, he apparently could not drive and almost struck a bus. He drove the automobile for a few minutes, then stopped, took the keys, placed them outside near a pole and fled on foot. The testimony was that they were in the automobile for a total period of approximately 10 minutes. The issue thus presented is whether the foregoing facts are sufficient to sustain a conviction of kidnapping in the second degree, in addition to the conviction of

robbery in the first degree, or, rather, do these facts require the application of the merger doctrine so as to preclude the kidnapping conviction. While our courts have addressed themselves to various aspects of this problem over the years (see *People v Florio,* 301 NY 46; *People v Hope,* 257 NY 147; *People v Small,* 249 App Div 863, affd 274 NY 551), the recent and prevailing trend may be considered to have commenced with the case of *People v Levy* (15 NY2d 159, cert den 381 US 938). In the *Levy* case, one of the defendants and another man took over control of an automobile and robbed the two occupants. While doing so, they drove the automobile for a distance of 27 city blocks over a period of 20 minutes before fleeing from the vehicle. The defendants were each convicted of two counts of kidnapping, of two counts of robbery in the first degree, and of criminally possessing a pistol. The Appellate Division unanimously affirmed the judgments (20 AD2d 518). The Court of Appeals affirmed the robbery and criminal possession of a pistol convictions, but reversed each kidnapping conviction and dismissed the kidnapping counts of the indictment. In so doing, Judge Bergan, on behalf of the majority, in addressing himself to the statutory definition of kidnapping, stated (15 NY2d 159, 164): "This definition could literally overrun several other crimes, notably robbery and rape, and in some circumstances assault, since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes. Some of the definitions could apply alike to kidnapping and abduction. It is a common occurrence in robbery, for example, that the victim be confined briefly at gunpoint or bound and detained, or moved into and left in another room or place. It is unlikely that these restraints, sometimes accompanied by asportation, which are incidents to other crimes and have long been treated as integral parts of other crimes, were intended by the Legislature in framing its broad definition of kidnapping to constitute a separate crime of kidnapping, even though kidnapping might sometimes be spelled out literally from the statutory words." Judge Bergan went on to state (pp 164–165): "We now overrule *People v. Florio* ([301 NY 46,] *supra)* to limit the application of the kidnapping statute to 'kidnapping' in the conventional sense in which that term has now come to have acquired meaning. There may well be situations in which actual kidnapping in this sense can be established in conjunction with other crimes where there has been a confinement or restraint amounting to kidnapping to consummate the other crime. But the case now before us is essentially robbery and not kidnapping. * * * Although the Federal Kidnapping Act (U. S. Code, tit. 18, ch. 55, §§ 1201–1202) differs from ours in text, it, too, is broadly drafted and the Supreme Court in *Chatwin v. United States* (326 U. S. 455) took precautions to see that its application was limited to acts which were in the nature of true kidnapping." Thereafter the Court of Appeals, in the case of *People v Lombardi* (20 NY2d 266), again directed its attention to the "merger" doctrine as applied to acts which might be deemed to constitute kidnapping. In the *Lombardi* case the facts were as follows: Defendant was a pharmacist and travel agent in Manhattan. On three occasions he hired young women to work in his travel agency. Each woman was induced by defendant to go to an alleged business party. Before starting on these three trips, defendant induced each of the young women to take pills which would tend to put her to sleep within 20 to 30 minutes, and to have other effects which would induce an inability to resist. Then defendant drove the three young women, who would be in states of physical and mental disability, to a motel in Queens where, in one instance, the jury found that he attempted to have sexual intercourse and, in the other two instances, that he made sexual

advances short of attempted intercourse. Thereafter defendant drove the women to their homes. The period of detention on the three occasions ranged from 10 to 15 hours. Defendant was convicted of three counts of kidnapping, one count of attempted rape in the first degree, three counts of assault in the second degree and one count of attempted assault in the second degree. With regard to the kidnapping charges, the Court of Appeals reversed the convictions and dismissed those counts. In so doing the majority, in an opinion by Judge Bergan, stated (pp 270–271): "The asportation of the three young women from Manhattan to Queens, aided in part, at least, by the drug, and the physical domination of them in a motel made possible by the drug, comes literally within the terms of the kidnapping statute (Penal Law, § 1250, subd. 1, as it read in 1964). But the direction of the criminal law has been to limit the scope of the kidnapping statute, with its very substantially more severe penal consequences, to true kidnapping situations and not to apply it to crimes which are essentially robbery, rape or assault and in which some confinement or asportation occurs as a subsidiary incident. Asportation in the present case, for example, played no significant role in the crimes. * * * It was held in *Levy* that under the kidnapping statute then in effect (Penal Law, former § 1250) * * * the detention or asportation of a victim for a relatively short time as an incident to robbery should not normally be prosecuted as kidnapping. (See, also, *Chatwin v. United States,* 326 U. S. 455.)" The Court of Appeals was again confronted with this issue in *People v Miles* (23 NY2d 527), where the court affirmed each defendant's conviction of kidnapping. However, the facts therein, which involve an attempted brutal murder and an extended interstate asportation in the trunk of an automobile wherein the complainant was securely bound, were totally dissimilar from those in the instant case. In passing upon defendants' contention in *Miles* that the kidnapping was ancillary to an attempted murder, the Court of Appeals did not reject, abandon or depart in any degree whatsoever from what it termed the *Levy-Lombardi* rule. Rather, it distinguished and drew a contrast as to the facts before it and the *Levy-Lombardi* facts. Judge Breitel, writing for a court which unanimously affirmed the convictions (with Chief Judge Fuld concurring in the result), referred to the *Levy* and *Lombardi* cases, stating (pp 539–540): "The cases cited are inapplicable. Brooks testified to an extensive trip, first, presumably to the Jersey City Meadows and then to upper Manhattan. The more complicated nature of the asportation, with changes in purpose and direction, first to a place in New Jersey, and then to New York, for purposes connected with but not directly instrumental to the attempt to kill Brooks, removes this case from the exception of the *Levy-Lombardi* rule. In the *Levy* and *Lombardi* cases, and especially in the *Levy* case, the restraint and asportation were parts of the crimes ultimately committed. * * * "Moreover, the rule has no purpose of ignoring as independent crimes alternative or optional means used in committing another crime which, by the gravity and even horrendousness of the means used, constitute and should constitute a separately cognizable offense. Nor was the *Levy-Lombardi* rule intended to exclude from 'traditional' or 'conventional' kidnapping abductions designed to effect extortions or accomplish murder. Indeed, in the *Levy* case, concern was expressed only with respect to elevating ordinary robberies, rapes, and assaults into the much more serious crime of kidnapping by too literal an application of the wording of the kidnapping statute." Judge Breitel continued (at pp 540–541): "Returning to this case, the People's evidence showed that the defendants may have, and most probably, kidnapped Brooks so that he might be murdered elsewhere.

Thus Brooks may have been 'taken for a ride' both literally and figuratively. If such was the case, and the jury so found, as it did, the *Levy-Lombardi* rule would not apply, since kidnapping, in its traditional sense, covers abduction not only for purposes of extortion, but also murder. Under this approach, since the facts raised no issue involving the *Levy-Lombardi* rule, the crime of kidnapping was established, if the jury accepted the People's proof. * * * On no view of the People's evidence, if believed, and it had to be believed to find defendants guilty of any crime (other than the possession of the guns), would there be a rational basis for applying the *Levy-Lombardi* rule and find that the asportation was only an inseparable part of the attempted murder." Thus, clearly, in *Miles,* not only was there not a repudiation of the *Levy-Lombardi* rule, but there was actually an affirmation of the rule, albeit a distinction was recognized based upon the facts of that case, insofar as the holding of that case was concerned. Most recently, in three companion cases decided jointly on November 30, 1976, *People v Cassidy, People v Usher* and *People v Dolan* (40 NY2d 763), the Court of Appeals once again addressed itself to the *Levy-Lombardi* rule, taking cognizance of the *Miles* exception to the rule, and particularly analyzing the application of the rule in the light of the 1967 revision of the Penal Law with respect to the very section of that law under which defendant was convicted in the instant case. Judge Jones, writing for a unanimous court, in affirming the dismissal of the kidnapping charges in all three cases, stated (pp 765–766): "In *People v Levy* (15 NY2d 159, cert den 381 US 938) we held that an abduction in connection with the commission of a robbery would not in all circumstances support a separate charge for kidnapping. The issue now before us is whether that so-called merger doctrine survived the 1967 Revision of the Penal Law with respect to kidnapping in the second degree under new section 135.20 of that law, and if so what should be the consequence of its application to the three cases now before us. We hold that the doctrine did indeed survive the statutory revision, and that it precludes a conviction of kidnapping in the second degree in each of these three cases. "The merger doctrine was of judicial origin and was based on an aversion to prosecuting a defendant on a kidnapping charge in order to expose him to the heavier penalty thereby made available, *where the period of abduction was brief, the criminal enterprise in its entirety appeared as no more than an offense of robbery or rape, and there was lacking a genuine 'kidnapping' flavor* (see Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law, § 135.25, p 502)." (Emphasis supplied.) Judge Jones proceeded to reiterate the continued viability of the *Levy-Lombardi* rule as follows (p 766): "The mere fact that the Legislature elected to require an extended period of detention for the most serious degree of the crime of kidnapping gives rise to no conclusion that it thereby intended every shorter abduction to constitute kidnapping in the second degree, thus abolishing the merger doctrine. If such had been the legislative intent, appropriate words to accomplish such result were readily available. Absent employment of such language, however, we presume that the statute was to be given effect—as it easily may be—consistent with the then outstanding principle of merger previously enunciated in *People v Levy* (15 NY2d 159, *supra)."* Finally, Judge Jones took note of the exception to the application of the *Levy-Lombardi* rule (p 767): "There is an exception to the doctrine, however, which in operation denies application of the rule in circumstances to which it would apply were it not for this qualification. This aspect invites attention to the manner or means employed in effectuating what would otherwise be the merged detention. '[T]he rule has no purpose of

ignoring as independent crimes alternative or optional means used in committing another crime which, by the gravity and even horrendousness of the means used, constitute and should constitute a separately cognizable offense' *(People v Miles, supra,* at p 539). If such be found to be the circumstance, the kidnapping aspect aggravated by the particular means or manner of the abduction may then support a separate prosecution." Clearly, when compared to the factual circumstances of *Levy* and *Lombardi,* as well as the facts in the three cases then before the Court of Appeals *(People v Cassidy, People v Usher* and *People v Dolan)* to which Judge Jones was addressing himself, the facts in the instant case are not within the ambit of the above-quoted exception to the merger doctrine. My distinguished brethren in the majority and I agree as to the continued efficacy of the merger doctrine. However, the point of departure between my colleagues and myself relates to the applicability of the merger doctrine to circumstances such as are present in the instant case, where the asportation takes place immediately subsequent to the acts constituting the robbery. My colleagues adhere to the viewpoint that the holdings in the various cases which have enunciated the merger doctrine limit its applicability to instances where the asportation takes place either prior to or simultaneously with the substantive crime involved. It is true that heretofore in those cases wherein the Court of Appeals has spoken and evolved the *Levy-Lombardi* rule, or the merger doctrine, the facts were that the asportation did indeed take place prior to, or concurrent with, the robbery or rape into which the abductions were declared to be merged. It is further true that one may construe certain parts of the language used in the *Miles (supra)* and the *Cassidy, Usher, Dolan (supra)* opinions, if read and interpreted literally, to limit the applicability of the merger doctrine to instances where the asportation is preparatory to or concurrent with the robbery or rape. This is so, primarily, because in those cases the asportation did in fact take place either prior to or concurrent with the robbery or rape. However, an analysis of all of the relevant cases compels the conclusion that the operative factor which has led to the evolution of the merger doctrine has not been the sequence of events. The true import and thrust of these cases is related to the true *nature* of the events and the actual intent underlying those events. This conclusion is fully supported by a relatively recent decision of this court in *People v Palmer* (50 AD2d 839). In that case, defendant was convicted, *inter alia,* of felony murder, robbery in the first degree (three counts), assault in the second degree, and kidnapping in the second degree (two counts). The facts were that the initial robbery and the felony murder had taken place some time prior to and at quite some distance from the point where the abduction occurred. Defendant had committed the *robbery* and murder and fled the scene in an automobile. After having driven some distance while fleeing from police officers, and after having made at least one prior stop and effort to obtain another automobile, defendant drove to another area. With his gun drawn, defendant approached complainant Angelo Giarratano in the driveway of the said complainant's home, and forced his way inside. Defendant waited until complainant Genevieve Giarratano returned home with their automobile, whereupon defendant, with drawn gun, forced Mr. and Mrs. Giarratano to drive him from Franklin Square, Nassau County, to Manhattan, in the vicinity of 125th Street, at which point defendant exited from the vehicle and fled. Prior to exiting from the automobile, defendant asked the Giarratanos for money. They jointly gave him $30 and defendant grabbed Mrs. Giarratano's pocketbook and took an additional $20 from it. While it is true that a robbery took place at the conclusion of the asporta-

tion, nevertheless, it is quite clear that the prime intent of defendant therein was the asportation as a method of escape from the initial robbery and murder, rather than a second robbery. This court held, insofar as is pertinent to the issue herein, that (pp 839–840): "His [defendant's] conviction for kidnapping in the second degree (two counts) is also unsupportable. The evidence established that any restraint of the victims, inherent in compelling them to drive defendant from Nassau County to Manhattan, had no such relationship to abduction as to make out a true kidnapping *(People v Miles,* 31 NY2d 918; *People v Lombardi,* 20 NY2d 266; *People v Levy,* 15 NY2d 159; *People v Usher,* 49 AD2d 499; *People v Watts,* 48 AD2d 863)." It should be noted that in *Palmer (supra)* where, in effect, this court deemed the asportation to be merged with the other crimes of which the defendant was convicted, the length of time and distance traveled during the course of the asportation far exceeded the time and distance involved herein. In the instant case, simply put, the crime involved was a robbery from beginning to end. The asportation, brief in time and distance, was merely incidental to the robbery and was obviously the result of defendant's panicky reaction to the complainant's wife coming upon the scene of the robbery. The People's chief witness (the complainant) testified that when his wife entered the lobby of the building, defendant stated to him, "You are going to have to get me out of this." This language and the events that followed clearly failed to manifest any intent whatsoever on the part of defendant to commit the crime of kidnapping. The brief asportation was part and parcel of defendant's attempt to depart or escape from the scene of the robbery without being apprehended. To label these events a kidnapping constitutes a travesty of the true concept and meaning of kidnapping. Under these circumstances, I fail to perceive any crime but a robbery. I, therefore, vote to affirm the conviction of robbery in the first degree and reverse the conviction of kidnapping in the second degree and dismiss that count of the indictment.