OPINION OF THE COURT
Martin B. Stecher, J.
The issue here is the nature of the threat of "deadly physical force” (Penal Law, § 135.00, subd 2) which will elevate an unlawful imprisonment in the second degree (Penal Law, § 135.05), a misdemeanor, to kidnapping in the second degree (Penal Law, § 135.20), a class "B” felony; whether such threat of "deadly physical force” must be capable of realization or merely be that which is reasonably perceived by the subject of the restraint.
Wladyslaw Fraczak, on June 10, 1978, attended a workers’ *389 compensation hearing at the World Trade Center. Dissatisfied with an adjournment ordered in order to procure neurological or psychological evidence concerning his injury, Fraczak removed from a bag a device which looked like a grenade and informed the Judge presiding and others assembled in the courtroom that a canvas bag alongside of him contained 80 pounds of dynamite. He refused to allow any of his "prisoners” to leave the room for more than 8 hours under circumstances where they reasonably believed that should they attempt to leave they would all be killed in an explosion which Fraczak would set off. The "grenade” was nothing but a metal sphere containing a pressed-out soft drink can on which had been stencilled the words of the song "God Bless America” and the poem by Emma Lazarus inscribed on the base of the Statue of Liberty; and the canvas bag, instead of containing 80 pounds of dynamite, contained four large loaves of Lithuanian bread.
A motion was made at the end of the case to dismiss the kidnapping charge for failure of proof and decision was reserved.
The jury rendered a verdict of "not guilty of kidnapping by reason of insanity.”
The issue has not been mooted by the jury verdict. A verdict of not guilty by reason of insanity is a finding that the defendant, in fact, committed the acts charged in the indictment (People ex rel. Henig v Commissioner of Mental Hygiene, 43 NY2d 334, 338). Accordingly, the defendant has a very real interest in having the court determine this application.
The relevant sections of the Penal Law defining kidnapping in the second degree provide:
"A person is guilty of kidnapping in the second degree when he abducts another person.” (Penal Law, § 135.20.)
" 'Abduct’ means to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force.” (Penal Law, § 135.00, subd 2.)
" 'Deadly physical force’ means physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.” (Penal Law, § 10.00, subd 11.)
Obviously, Fraczak did not have at hand any "deadly physi *390 cal force;” and his threat was an empty one. The question to be decided is as indicated above: whether the Legislature intended the crime to be based on reality or on the reasonable perception of the persons "held”; whether the test of the threat to use deadly physical force was an objective test or a subjective test.
I am of the opinion that the Legislature by making kidnapping in the second degree one of our most serious crimes, intended that it apply to situations where the threat of deadly physical force was real and not merely apparent. The recent history of the kidnapping statutes and judicial interpretation of them has been to limit the application rather than broaden the application of kidnapping. Thus, although detention and asportation actually occur and even though the threat of deadly physical force may be used, where the intent of the criminal is to commit another crime, such as robbery (People v Levy, 15 NY2d 159) or rape (People v Lombardi, 20 NY2d 266), "the direction of the criminal law has been to limit the scope of the kidnapping statute, with its very substantially more severe penal consequences, to true kidnapping situations and not to apply it to crimes which are essentially robbery, rape or assault and in which some confinement or asportation occurs as a subsidiary incident.” (People v Lombardi, supra, p 270.) As Judge Breitel pointed out in People v Miles (23 NY2d 527, 540) "the Levy-Lombardi rule was designed to prevent gross distortion of lesser crimes into a much more serious crime by excess of prosecutorial zeal.” Again, as pointed out in People v Cassidy (40 NY2d 763, 765-766) "[t]he merger doctrine [merging the kidnapping into the underlying offense of robbery or rape] was of judicial origin and was based on an aversion to prosecuting a defendant on a kidnapping charge in order to expose him to the heavier penalty thereby made available, where a period of abduction was brief * * * and there was lacking a genuine 'kidnapping’ flavor”.
It must be assumed that the Legislature in enacting the kidnapping statutes in 1965, following the enunciation of the Levy-Lombardi rule, intended that crimes of lesser degree not be elevated to kidnapping merely because of a period of detention; that in order for there to be a kidnapping there had to be a "genuine kidnapping flavor” (see People v Cassidy, supra, at p 766). Holding people at bay using a sham grenade and four loaves of bread is hardly to be deemed a crime of *391 great "gravity” or "horrendousness” (see People v Cassidy, supra, at p 767).
In charging the jury, the court was not even able to submit, as a lesser included offense, unlawful imprisonment in the first degree, an "E” felony (Penal Law, § 135.10) because concededly no one was "expose[d] * * * to a risk of serious physical injury.” The lesser included offense necessarily was unlawful imprisonment in the second degree, a misdemeanor (Penal Law, § 135.05).
In those statutes where the subjective response of the victim is the standard to be applied, the Legislature has said so expressly. Thus, the coercion statutes use expressions such as "by means of instilling in him a fear” (Penal Law, § 135.60), and, "by instilling in the victim a fear” (Penal Law, § 135.65) that certain consequences, including physical injury will flow. Similarly, in the sex offenses statutes, "forceable compulsion” includes a "threat * * * that places a person in fear of immediate death or serious physical injury” (Penal Law, § 130.00, subd 8). Again, in larceny by extortion (Penal Law, § 155.05, subd 2, par [e]) the crime is accomplished by causing another to deliver property "by means of instilling in him a fear that, if the property is not so delivered” physical or other injury will result. Under the robbery statutes, a person is guilty of second degree robbery when he "[displays what appears to be” a firearm (Penal Law, § 160.10, subd 2, par [b]; emphasis supplied).
It may thus be seen that where the subjective fear or perception of the viewer is the standard to be imposed, the Legislature has said so quite clearly. In the kidnapping statutes no such language is used. Rather the threat to use deadly physical force must be capable of present realization for the crime to be charged under the "force” provision of the statute (Penal Law, § 135.00, subd 2, par [b]).
I am satisfied that a simple misdemeanor, unlawful imprisonment in the second degree, was not intended by the Legislature to be elevated to the crime of kidnapping, a class "B” felony, by a threat which had no possibility of realization.
Accordingly, an order will be entered setting aside the verdict of the jury of "not guilty by reason of insanity” of the crime of kidnapping in the second degree; dismissing each of the kidnapping charges and directing the entry of a judgment of "not guilty of unlawful imprisonment in the second degree *392 by reason of insanity” in their place under each count of the indictment in which kidnapping was charged.
All other motions not otherwise disposed are denied.