OPINION OF THE COURT
Jerome L. Reinstein, J.
Since neither precedent nor reason requires application of the so-called merger doctrine to a kidnapping-attempted escape situation, defendant’s trial motion to dismiss the three kidnapping counts of the indictment was denied. Moreover, the State’s public policy should preclude its employment where, as here, three unarmed correction officers were overpowered, bound, gagged, blindfolded, punched, kicked and their very lives placed in jeopardy during an unsuccessful escape attempt.
The issue arose in the foliowng context. On January 5, 1982, defendant, together with 15 to 17 other inmates, was confined in a maximum security wing of the Bronx House of Detention for Men. He had been previously convicted of murder and was then awaiting trial on another pending indictment. At approximately 8:40 p.m. on that date the defendant and five other inmates overpowered the two unarmed correction officers assigned to guard the wing. A third correction officer, who entered the area on a routine administrative matter, was also overpowered. Each officer was bound, gagged and blindfolded, punched, kicked and *28 dragged to various locations in the cell block. While so restrained they heard and saw (either before being blindfolded or when a blindfold became loose) one of the inmates sawing on the bars of a window with a hacksaw. At approximately 9:50 p.m. the other correction officers in the detention facility learned of the situation; and a response team subdued the inmates and freed the hostages. Before and during the rescue effort the lives of the three overwhelmed officers were repeatedly threatened; particularly while the rescuers were forcing their way into the wing through the barricaded entrance gate. After a jury-trial defendant was convicted of three counts of kidnapping in the second degree and attempted escape in the. first degree; and acquitted of assault in the second degree and promoting prison contraband in the first degree.
Prior to People v Cassidy (40 NY2d 763) it was uncertain whether the judicially created merger doctrine, first enunciated in People v Levy (15 NY2d 159) and followed in People v Lombardi (20 NY2d 266), survived the 1967 revision of the Penal Law’s kidnapping provisions (People v Rodriguez, 52 AD2d 781). Cassidy held that it did. “The merger doctrine is [still] intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may. not fairly be attributed to them.” (People v Cassidy, supra, p 767; see, also, People v Geaslen, 54 NY2d 510, 516-517.)
However, as Cassidy recognized, the doctrine is not without exception. “[T]he rule has no purpose of ignoring as independent crimes alternative or optional means used in committing another crime which, by the gravity and even horrendousness of the means used, constitute and should constitute a separately cognizable offense * * *
“In short, the Levy-Lombardi rule was designed to prevent gross distortion of lesser crimes into a much more serious crime by excess of prosecutional zeal. It was not designed to merge ‘true’ kidnappings into other crimes merely because the kidnappings were used to accomplish ultimate crimes of lesser or equal or greater gravity. Moreover, it is the rare kidnapping that is an end in itself; *29 almost invariably there is another ultimate crime.” (People v Miles, 23 NY2d 527, 539-540.)
In the vast majority of the cases which have invoked the rule the underlying crime was rape or robbery, since both crimes necessarily involve some form of restraint and, often, incidental asportation. (See, e.g., People v Levy, supra; People v Lombardi, supra; People v Cassidy, supra; People v Geaslen, supra; People v White, 88 AD2d 940; People v Robinson, 59 AD2d 881; but cf. People v Smith, 47 NY2d 83, where the robbery was fully consummated before any unlawful restraint occurred.)
Neither counsel nor independent research has revealed any case where the underlying crime was escape and the means used to accomplish it involved an abduction. But since the substantive offense, escape, could have been committed without the kidnappings, and was separable therefrom, no merger should be deemed to have occurred.
Additionally, and in any event, the Miles exception above quoted should preclude the judicial extension of the merger doctrine to any situation involving the detention of hostages for a significant period. (Cf. People v India, 67 AD2d 488.) And this exception should particularly apply to the taking of correction officers as hostages. These officers, of necessity, come in daily contact with inmates, some serving lengthy sentences, who often may feel they have little to lose by attempting to escape. At least let it be known that if any correction officer is used as a shield or hostage in such attempt, the abductor will be severely dealt with.
Before concluding, it is noted that one of the merger doctrine’s initial concerns was to avoid elevating less serious offenses into more serious crimes by liberal application of the kidnapping statute’s language. The disparity between the two crimes involved herein, particularly the sentences which may be imposed, cannot be ignored. Attempted escape in the first degree is a class E felony offense (Penal Law, §§ 110.05, 205.15), whereas kidnapping in the second degree is a class B violent felony offense (Penal Law, §§ 135.20, 70.02). If, as it appears, the defendant has been subjected to one or more predicate violent felony *30 convictions, the mandatory sentence he faces is clearly not insignificant. (Penal Law, §§ 70.04, 70.08, 70.25.)
Nevertheless for the reasons above stated, defendant’s conviction of kidnapping in the second degree is a separate cognizable offense and should be treated as such.