402 A.2d 999

**COMMONWEALTH of Pennsylvania**

v.

**Kim Lee HUBBARD, Appellant.**

Supreme Court of Pennsylvania.

Argued April 19, 1979.

Decided July 5, 1979.

Peter T. Campana, Campana & Campana, Williamsport, for appellant.

Robert F. Banks, 1st Asst. Dist. Atty., Williamsport, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

LARSEN, Justice.

In February of 1974, a jury found appellant guilty of murder of the second degree. Post-verdict motions were denied and appellant was sentenced to ten to twenty years imprisonment. On direct appeal, *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977) (hereinafter *Hubbard I*), appellant contended, *inter alia,* that post-trial counsel[1] was ineffective because in the post-verdict motions he failed to raise the issue of trial counsel's alleged ineffectiveness for failing to object to certain allegedly prejudicial comments made by the district attorney during summation.[2] After finding this contention to be of arguable merit, this Court

1. Appellant was represented at trial by privately retained counsel (trial counsel). Trial counsel was succeeded by a public defender (post-trial counsel), who filed supplemental post-verdict motions. On direct appeal, appellant was represented by another public defender (appellate counsel).

2. The comments of the district attorney quoted below appear in *Hubbard I:*

 "Only two people know where the scratch marks [on Jennifer's neck] came from, Jennifer Hill, who is never going to testify, and the killer. So we will never be able to explain everything in this case, obviously, because one party to the explanation is dead and the other party is not telling the truth." (N.T., summation, 10–11).
 "And once you conclude it didn't happen in that cornfield, where did it occur? Only two people know, one of them is Jennifer Hill, she will never tell you, and the killer, and we can't prove where that killing took place, but what we do know is that the Defendant has consistently fabricated in this case. Does he know?" (N.T., summation, 16).
 "How about some of the other lies? The Defendant said he had never been in that cornfield in his life." (N.T., summation, 21).
 "Now, let's talk about a few other things. The Defendant said, 'I lied to get a job.' He said that sort of proud. Would he lie if he murdered? Certainly." (N.T., summation, 22).
 "But he made a mistake of the tire prints and the foot markings, and once he started to lie to cover it up, they kept getting bigger and bigger and he kept getting enmeshed in his own lies." (N.T., summation, 27).

vacated the judgment of sentence and remanded the case for an evidentiary hearing stating:

Our inability to determine from the record trial counsel's basis for failing to object further complicates our review of post-trial counsel's alleged ineffectiveness for not raising this issue post-trial. If post-trial counsel investigated this aspect of trial counsel's alleged ineffectiveness and reasonably concluded that trial counsel acted in the best interest of appellant, then post-trial counsel could not be said to have been ineffective for failing to raise the issue. If, on the other hand, no such consideration was given to the question by post-trial counsel, then this failure to raise the issue would have been the product of lack of diligence and thus would constitute ineffective assistance. . . . *Hubbard I,* 472 Pa. 285–286, 372 A.2d at 699–700.

Following the evidentiary hearing at which both post-trial counsel and trial counsel testified, the lower court held that post-trial counsel rendered effective assistance to appellant, and therefore reinstated the judgment of sentence. Appellant now appeals from that order of the lower court.

This Court held in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604–05, 235 A.2d 349, 352–3 (1967) that:

[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests [Emphasis original].

An accurate summary of the testimony adduced at the evidentiary hearing appears in the trial court's opinion (pp. 2–3) as follows:

Defendant's post-trial counsel was Chief Public Defender of Lycoming County at the time he entered the case. He testified that at least two hundred hours were consumed by him in reviewing the trial evidence, preparing and arguing post-trial motions and investigating alleged discrepancies with respect to some of the physical evidence, which were raised in post-trial motions as assign-

ment of error # 7. (n.t. 34). Although Mr. Felix testified that in certain instances he might have tried the case differently than trial counsel, after reviewing the testimony he concluded that, in the totality of the case, trial counsel had not been ineffective in not objecting to the closing remarks (n.t. 12). He noted that trial counsel had objected to other portions of the summation (n.t. 9–10); that constant objection may lead to resentment of defense counsel by the jury, to the detriment of the defendant (n.t. 13); that objection might highlight the remarks (n.t. 13); that trial counsel's tactics could be grasped by review of the record (n.t. 16); and that trial counsel's failure to object at that stage appeared to be a chosen strategy (n.t. 22, 27).

Defendant's privately retained trial counsel, Patrick H. Fierro, also testified at the hearing. He testified that the "major thrust" of defendant's case was credibility (n.t. 37–38) and that he anticipated the District Attorney would "become shrill" and alienate the jury by his attacks on the defendant (n.t. 38–39, 45), which was "a plus" for the defendant. He further testified that if he had asked for and received a mistrial, "we would have lost the best chance we ever had at that point in time of ever getting whatever favorable verdict a jury might give us, and that a second go-around would have been a disaster in view of the entire case as it finally developed." (n.t. 40). Mr. Fierro elaborated on this statement later when he said that in view of the Commonwealth's rebuttal testimony "the Commonwealth could have fairly destroyed the defense even before it made an offer of defense in the next go-around", and that defendant still had enough credibility left before this jury to get "a more favorable response" from it (n.t. 43). As he noted, the jury reached verdict of murder in the second degree, whereas, the Commonwealth was seeking a first degree verdict (n.t. 44).

We have reviewed the trial transcript and it establishes that trial counsel presented a well prepared and vigorous defense, and that trial counsel's failure to object to the

comments in question (Footnote 2, *supra* ) was born of a reasonable, calculated, and apparently successful trial strategy.[3]

Moreover, the post-verdict motions filed by post-trial counsel reflect thorough and untiring preparation. Thus, the record is devoid of any evidence which would indicate that post-trial counsel's failure to raise the issue of trial counsel's alleged ineffectiveness was the product of "sloth or lack of awareness of the available alternatives." *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975).

We do not condone the remarks of the prosecutor in this case. However, after reviewing the entire record in this case we are convinced that the lower court properly concluded that post-trial counsel was effective.

Order of the Court of Common Pleas of Lycoming County reinstating the judgment of sentence is hereby affirmed.

ROBERTS, J., filed a dissenting opinion.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I must dissent. There was no reasonable basis for trial counsel's failure to object to the prosecution's prejudicial and inflammatory remarks about appellant's credibility. The prosecution referred to appellant's version of the facts as a "lie" which "kept getting bigger and bigger." There is no question that it is improper for the prosecutor to express a personal opinion about a defendant's guilt or credibility. *See Commonwealth v. Pfaff*, 477 Pa. 461, 384 A.2d 1179 (1978). This Court has said:

"The ABA Standards Relating to the Prosecution Function expressly state: 'It is unprofessional conduct for the

---

**3.** During trial counsel's summation, which lasted approximately eighty-five minutes, he directly challenged the credibility of key Commonwealth witnesses and attempted to downplay the inconsistent statements which appellant made to police prior to trial. At one point trial counsel commented as follows; "The State said he made some inconsistent statements. About what? About where he was at a certain time, whether he paid this bill first or that bill second. You know what I think that is, Ladies and Gentlemen? Baloney." (N.T., summation, 13).

prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence . . . of the defendant.' ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution and Defense Function § 5.8(b) (Prosecution Function) (Approved Draft 1970.) The ABA Code of Professional Responsibility also provides that '. . . a lawyer shall not . . . (4) Assert his personal opinion . . . as to the credibility of a witness . . ." ABA Special Committee on Evaluation of Ethical Standards, Code of Professional Responsibility, DR 7–106(C)(4) (1969). These standards are in response to the view that '. . . the cause should turn on the evidence, not on the standing of the advocate, and the witnesses must stand on their own.' ABA Standards, Prosecution, supra at 5.8(b) (Commentary).

The prosecutor, in branding appellant's testimony as a 'malicious lie' exceeded the permissible bounds of cross-examination. Furthermore, he injected his highly prejudicial personal opinion of appellant's credibility into evidence, thereby clearly and improperly intruding upon the jury's exclusive function of evaluating the credibility of witnesses. See *United States v. Schartner,* 426 F.2d 470, 478 (3d Cir. 1970); *People v. Lombardi,* 20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206 (1967); *Commonwealth v. Maloney,* 365 Pa. 1, 5, 73 A.2d 707, 709 (1950); *People v. Reese,* 220 Cal.App.2d 143, 33 Cal.Rptr. 561 (1963); *People v. Hickman,* 34 A.D.2d 831, 312 N.Y.S.2d 644 (1970)." *Commonwealth v. Potter,* 445 Pa. 284, 286–7, 285 A.2d 492, 493 (1971). We have also said that:

"Our decisions have firmly established that the prosecutor may not express his personal opinion regarding a defendant's guilt, credibility or trial strategy. Nor may the prosecutor intentionally misstate the evidence given at trial in order to mislead the jury or refer to words a decedent-victim might have uttered were he still alive. We have ruled that '[t]he determination of guilt must *not* be the product of fear or vengeance, but rather intellectu-

ally compelled after a disinterested, impartial and fair assessment of the testimony that had been presented.'" (Footnotes omitted.) (Emphasis in original.)

*Commonwealth v. Gilman, supra,* 470 Pa. at 189, 368 A.2d at 258.

In this case, defense counsel's failure to object to the prosecution's remarks as to appellant's credibility constituted the ineffective assistance of counsel, and appellant is entitled to a new trial.

ROBERTS, Justice, dissenting.

For the reasons set forth in my dissenting opinion in *Commonwealth v. Hubbard,* 472 Pa. 259, 286, 372 A.2d 687, 700 (1977) (Roberts, J., joined by Manderino, J., dissenting), I remain of the view that a remand for an evidentiary hearing on the ineffectiveness of counsel was useless. "No 'reasonable basis designed to effectuate' appellant's interests" has been, or indeed, could have been, presented which would justify either trial counsel's failure to object when the district attorney expressly and repeatedly branded appellant a liar, or post-verdict counsel's failure to raise trial counsel's ineffectiveness. Id., 472 Pa. at 288, 372 A.2d at 700–701. This case should be remanded for a new trial, just as it should have been twenty-nine months ago.