**Kim Lee HUBBARD, Appellant,**

v.

**Glen R. JEFFES, Superintendent of S.C.I. at Dallas and Attorney General of Commonwealth of Pa., Appellees.**

**No. 80–1369.**

United States Court of Appeals, Third Circuit.

Argued Oct. 17, 1980.

Decided July 7, 1981.

---

Gibbons, Circuit Judge, concurred and filed opinion.

Richard S. Watt, Haverford, Pa., (Argued), Gerber, Gerber & Shields, Norristown, Pa., Peter T. Campana, Williamsport, Pa., for appellant.

Robert F. Banks (Argued), First Asst. Dist. Atty., Kenneth D. Brown, Dist. Atty., Williamsport, Pa., for appellees.

Before SEITZ, Chief Judge, ALDISERT, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM and SLOVITER, Circuit Judges.

OPINION OF THE COURT

ADAMS, Circuit Judge.

Kim Lee Hubbard appeals from a denial of his petition for federal habeas corpus. He was convicted in the Lycoming County Court of Common Pleas, Criminal Division, of second degree murder. The Pennsylvania Supreme Court twice upheld the conviction, after direct appeals in which Hubbard contended that the admission of certain evidence transgressed his Fourth Amendment rights, that the evidence at trial was insufficient to support the conviction, and that his trial and post-trial counsel

had been ineffective.[1] Hubbard once again advances these contentions in the current petition. Specifically, he claims that because the police neglected to read him the *Miranda* warnings before requesting the items, he did not voluntarily consent to the seizure of his boots and car. Thus, he argues, the admission of evidence obtained from this "seizure" violated the standards of voluntariness required by the Fourth Amendment.[2] Additionally, Hubbard asserts that his trial counsel was ineffective in failing to make a timely suppression motion and in not interposing objections to allegedly inflammatory closing remarks by the prosecutor. Finally, Hubbard challenges the assistance rendered by post-trial counsel on the ground that he did not raise in post-trial motions the issue of trial counsel's performance.

We conclude that the state court afforded Hubbard an adequate opportunity to present his Fourth Amendment claim, and that his other contentions are without merit. Accordingly, we affirm the district court's denial of the habeas petition.

## I.

The following facts were adduced in the state court. Jennifer Hill, a twelve-year-old friend of Hubbard's sister, spent the night of October 18, 1973 at the Hubbard home. She was last seen alive at approximately 4:30 on the afternoon of October 19, shortly after leaving the Hubbard residence, entering a metallic green car. Her body was found ten days later in a nearby cornfield. An autopsy identified the cause of death as manual strangulation, and placed the time of death between 4:30 and 8:00 p. m. on October 19. A search of the cornfield revealed a boot-heel mark under the victim's body, and two tire marks embedded in a mound of clay near the entrance to the field.

On October 31, two police officers and the district attorney went to the Hubbard residence to question members of the family. No family member was a suspect at the time. Mrs. Hubbard called the school where her son was a student and asked that he return home. When he arrived at the Hubbard home, the officers requested him to wait in another room until they finished speaking with his parents. According to petitioner's testimony, the police then questioned him for approximately thirty to forty-five minutes out of his parents' presence. Hubbard testified that he was not fearful during this questioning, and that he voluntarily cooperated with the police. He also stated at trial that the officers told him he was free to leave the room or to end the questioning at any time.

The officers then asked Hubbard if he owned a pair of boots and a car. Hubbard responded affirmatively and the police asked permission to inspect and to retain possession of these items. The state court found that "it was the uncontradicted testimony of the officers that they twice advised Hubbard that he had a right to refuse to consent to the requested inspection." 472 Pa. 259, 372 A.2d 687, 694 (1977). Hubbard nevertheless turned over his boots and drove one officer back to Borough Hall and surrendered his car to him.

1. In the first appeal, the Supreme Court vacated the judgment of sentence and remanded for consideration of the effectiveness of appellant's post-trial counsel. 472 Pa. 259, 372 A.2d 687 (1977). Following an evidentiary hearing, the lower court held that post-trial counsel had rendered effective assistance, and reinstated the judgment of sentence. In his second appeal, Hubbard challenged the trial court's finding that counsel had not been ineffective, and the Supreme Court affirmed. 485 Pa. 353, 402 A.2d 999 (1979).

2. Although the alleged failure to give *Miranda* warnings is an element of Hubbard's argument, this appeal presents only a Fourth Amendment issue concerning the voluntariness of Hubbard's consent. We do not address any Fifth Amendment *Miranda* problems that may arguably lurk in the record. Hubbard asserted no Fifth Amendment claims in the state court, and the parties did not press such claims in the district court or on this appeal. Moreover, had Hubbard raised a Fifth Amendment claim for the first time in his habeas petition, we could not consider it without a demonstration that he exhausted state court remedies, or in the absence of a showing of cause for the failure to raise the claim below and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Subsequent police investigation revealed that the heel mark under Jennifer Hill's body was made by one of the boots given to the police by Hubbard, and that the tire marks near the scene matched the tires on Hubbard's car. These two items of information became a principal element in the case against Hubbard.

At trial, one police officer asserted that Hubbard had been given the *Miranda* warnings prior to being questioned in his home. However, the other officer, Sgt. Peterson, denied that they read the *Miranda* rights, because Hubbard "was not a suspect" at the time. Upon hearing Sgt. Peterson's recollection, Hubbard's counsel moved to suppress the physical evidence turned over during the interview at the Hubbard home, arguing that the absence of *Miranda* warnings had rendered Hubbard's consent involuntary under the Fourth Amendment. In the alternative he moved for a suppression hearing. The trial court denied the motion, ruling that it was not timely under Pa.R. Crim.P. 323(b), which requires motions to suppress evidence to be made before trial.

In a post-trial opinion, the trial judge considered the merits of the Fourth Amendment claim. He made a factual finding that Hubbard had "voluntarily surrendered his boots and car for examination." The trial judge then ruled that "*Miranda* warnings are not a prerequisite to a voluntary surrender of evidence," citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). *Schneckloth* holds that, in distinction to the waiver standards that govern custodial interrogations, a knowing and intelligent waiver of the right to refuse a request to search is not a prerequisite to finding a voluntary consent to a search or seizure. The case indicates, however, that knowledge of the right to refuse consent bears on the question of voluntariness.

The Pennsylvania Supreme Court affirmed the denial of the suppression motion. It reiterated that the pre-trial filing requirement of Pa.R.Crim.P. 323(b) permits only two exceptions. Untimely suppression motions are allowed 1) where the opportunity to make an application to suppress did not previously exist, or 2) where "the interests of justice require." 372 A.2d at 693.

The Pennsylvania Supreme Court rejected Hubbard's argument that the opportunity to make an application did not exist until his lawyer learned, at trial, that no *Miranda* warnings · had been given at the home. Counsel was aware of all the facts pertaining to the interview, the court reasoned, and he therefore had the opportunity before trial to determine whether a suppression motion was advisable.

Reaching the merits, the Pennsylvania Supreme Court then concluded that the interests of justice did not require relaxation of the pre-trial rule in this situation, because Hubbard's constitutional objection was not well-founded. Determining that Hubbard was not in custody at the time, that he was aware of his right to withhold consent, and that his consent was voluntary, the court held that under *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the Fourth Amendment had not been violated.

## II.

Our latitude in reviewing the state court proceedings is limited. 28 U.S.C. § 2254(d) directs that the factual findings of both the trial court and the Pennsylvania Supreme Court "shall be presumed to be correct." *See Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). *Sumner* holds that a habeas petitioner, in order to overcome state court factual determinations, must demonstrate "by convincing evidence" that the state proceeding was inadequate or the determinations clearly erroneous. We may also be precluded by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), from reexamining the merits of *Hubbard's* Fourth Amendment claim. In *Stone v. Powell* the Court held that when a state prisoner raises a Fourth Amendment violation in a habeas petition, a federal court may not consider the merits of the claim if the state tribunal had afforded the petitioner "an opportunity for a full and

fair litigation" of his claim. *Id.* at 494, 96 S.Ct. 3052, 49 L.Ed.2d 1067.

■ We agree with the Pennsylvania Supreme Court that Hubbard had a full and fair opportunity to present his claim to the state courts. His counsel was aware of the interview and of the need to make suppression motions before the commencement of trial. He could have reviewed statements Hubbard made to the police that might have acknowledged receipt of the warnings. He could have questioned Hubbard or his parents about whether *Miranda* warnings were given. Counsel had all the resources at his command to investigate and present a Fourth Amendment claim at the proper time. The failure to do so was not brought about by any restriction of the opportunity by the state courts.

■ An additional reason supports the conclusion that Hubbard enjoyed the opportunity contemplated in *Stone v. Powell.* Despite denying the request to conduct a suppression hearing in the middle of the trial, the trial court permitted counsel to explore at trial the questions of Hubbard's custody and the voluntariness of his consent to the seizure. Moreover, the Supreme Court in *Schneckloth v. Bustamonte, supra,* declared that the voluntariness of consent to a search is a factual question to be determined from the particular circumstances. The trial judge specifically found that Hubbard had voluntarily relinquished his boots and car. Since Hubbard has offered no evidence to demonstrate that the findings were clearly erroneous or that the state proceedings amounted to a denial of due process, the Supreme Court's decision in *Sumner v. Mata, supra,* makes it clear that we are bound by the finding of voluntariness.

In the course of deciding whether the circumstances fell within an exception to Pa.R.Crim.P. 323(b), the Pennsylvania Supreme Court considered the merits of Hubbard's suppression motion,[3] and also held that the failure to give *Miranda* warnings did not nullify the voluntariness of Hubbard's consent. Under these circumstances, where Hubbard had ample occasion to develop relevant evidence and received a ruling on the merits, he had a full and fair opportunity to advance his Fourth Amendment claim in the state court system.

■ Furthermore, on the merits, Hubbard's Fourth Amendment argument rests on a flawed premise. The absence of *Miranda* warnings does not vitiate consent to a seizure of personal property, because the *Miranda* protections are addressed to constitutional rights that are distinct from Fourth Amendment rights. Solicitude for individual privacy is the central thrust of the Fourth Amendment. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Privacy rights must be balanced, however, against the interest of the community "in encouraging consent [to a search], for the resulting search may yield necessary evidence of the solution and prosecution of crime, evidence that may insure that a wholly innocent person is not wrongly charged with a criminal offense." *Schneckloth, supra,* 412 U.S. at 243, 93 S.Ct. at 2056. Inasmuch as the integrity of the fact-finding process may be enhanced by admitting evidence recovered from a search or seizure, the Supreme Court has not required a stringent standard for measuring voluntariness in the Fourth Amendment context. As the Court noted in *Schneckloth,* in refusing to impose the "knowing and intelligent waiver" standard, "almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." 412 U.S. at 237, 93 S.Ct. at 2052. The *Miranda* rights implicate the reliability of the truth determining process, because they apply in an inherently coercive situation and they

**3.** The "lack of opportunity" exception to Rule 323(b) is similar to the *Stone v. Powell* standard permitting federal courts to review Fourth Amendment claims when the petitioner lacked a full, fair opportunity to air these claims before state tribunals. This parallel substantiates our conclusion that Hubbard had an opportunity, within the meaning of *Stone v. Powell,* to present his Fourth Amendment claim to the Pennsylvania trial court.

protect the right to counsel and the privilege against self-incrimination. Knowledge of the right to be assisted by counsel and to remain silent, however, has little bearing on the voluntariness of a consent to a search. So long as the "waiver" of the right to refuse consent need not be knowing and intelligent, the person whose consent is sought need not be made aware of the full panoply of constitutional protections available to a criminal suspect who is undergoing custodial interrogation. Consequently, the absence of *Miranda* warnings is not dispositive of whether a person voluntarily consented to a search.

### III.

Hubbard's challenges to the effectiveness of counsel are without merit. The Pennsylvania Supreme Court concluded that trial counsel might have been amiss in not ascertaining the facts that would have formed a predicate for the suppression motion. However, the court held that this did not constitute ineffective assistance, because a timely motion would have been unavailing for the reason that the Fourth Amendment claim was without merit. 372 A.2d at 698. We concur in this conclusion. It follows that post-trial counsel was not ineffective in neglecting to assert trial counsel's alleged mishandling of the suppression motion.

### IV.

We also accept the Pennsylvania court's finding that trial counsel's failure to object to allegedly improper closing comments by the prosecutor "was born of a reasonable, calculated, and apparently successful trial strategy." 402 A.2d at 1001. Trial counsel testified that he anticipated that the prosecutor would become shrill and alienate the jury, thereby diminishing the likelihood that the government would gain a conviction for first degree murder. The course chosen by counsel was reasonably designed to effectuate his client's interests, and indeed, the jury failed to return the verdict urged by the prosecution, and convicted Hubbard only of murder in the second degree. Since trial counsel was not ineffective, a fortiori post-trial counsel did not render inadequate assistance when he declined to raise trial counsel's failure to object to the prosecutor's summation as a ground for post-trial relief.

### V.

For the foregoing reasons, the judgment of the district court dismissing the petition for a writ of habeas corpus will be affirmed.

GIBBONS, Circuit Judge, concurring.

I would hold that the fifth amendment issue involving the testimonial nature of Kim Lee Hubbard's acknowledgment that the disputed items belonged to him was presented in the state courts and thus proper for our consideration. However, because the majority holds that the fifth amendment issue was not clearly raised in state court, I, too, do not reach this issue at this time. I agree with the majority's disposition of Hubbard's fourth amendment claim, but anticipate seeing this case again.