STATE of Iowa, Plaintiff–Appellant,

v.

Charles William LITTLE, Jr.,
Defendant–Appellee.

No. 87–630.

Court of Appeals of Iowa.

Jan. 27, 1988.

John C. Wellman and Robert W. Powers, Office of Citizen Advocate, Des Moines, for defendant-appellee.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., and James W. Ramey, Asst. Polk Co. Atty., for plaintiff-appellant.

Heard by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

OXBERGER, Chief Judge.

This is a discretionary review action brought by the State seeking reversal of the district court's order sustaining defendant's motion to suppress evidence for an alleged *Miranda* violation. The primary issue we must decide is whether a request for consent to search constitutes interrogation for *Miranda* purposes. We hold it does not and reverse.

Our scope of review is de novo. *State v. Cook*, 330 N.W.2d 306, 308 (Iowa 1983). We examine the totality of the circumstances. *Id.* We find the facts to be substantially as follows.

On October 27, 1987, Des Moines police officers were dispatched to 105 S.E. Diehl. Upon arrival they discovered the bodies of Charles and Arlene Little. The medical examiner after a preliminary investigation determined the victims were killed by gunshot wounds from a small bore shotgun.

The first officer on the scene, Simmer, was told the defendant discovered the bodies and was at a neighbor's house. Simmer met the defendant walking back to the

house and placed him in a police car. No questioning occurred at this time.

Investigator Soderquist arrived at the scene at 7:30 p.m. After being briefed on the status of the investigation, he escorted the defendant and a neighbor, Mrs. Miller, to an unmarked squad car. Soderquist questioned the defendant to obtain general background information about the victims and the defendant's actions that day. Soderquist then left the defendant and Mrs. Miller in the car and went to confer with other officers and witnesses. At this time, Investigator Shaver went to the car to speak with the defendant. Shaver questioned the defendant for twenty to forty minutes.

After further investigation, the police decided the defendant should be taken to the police station for further questioning. He was not asked to voluntarily come to the station, but was taken there by Soderquist. At no time was the defendant ever read his *Miranda* rights.

Upon arriving at the police station Soderquist questioned the defendant. This questioning took place in a large room with various other working detectives. This questioning continued intermittently until 10:00 p.m.

At approximately 10:30 p.m., Officers Toma and Shaver returned to the station and the defendant was placed in their custody for additional questioning. They took the defendant into a small room and questioned him from 11:30 p.m. to 12:23 a.m. An assistant county attorney arrived at the station around midnight and participated in the questioning. It was during this questioning that the defendant gave his consent to the police to take his clothing. The police also performed a nitric acid test on the defendant's hands. Also, during a break in this questioning, the defendant attempted to leave the room to get a soda and was told to go back in and sit down. Upon completion of the taped interview session, the defendant was allowed to go home.

The defendant moved to suppress all the oral statements and the physical evidence obtained from his alleged consent. The district court suppressed the statements and physical evidence because the court determined the defendant was not given his *Miranda* warnings. The State has appealed that ruling.

It is well established in this country that a defendant who is placed in custody must be given *Miranda* warnings prior to being interrogated. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* only applies when a defendant is interrogated while in custody. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977); *State v. Cook*, 330 N.W.2d 306, 311–13 (Iowa 1983). Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. Custodial interrogation does not include investigatory questioning without custody, *State v. McDonald*, 190 N.W.2d 402, 404 (Iowa 1971), basic identification questioning, *State v. Beatty*, 305 N.W.2d 496, 499 (Iowa 1981), or general on-the-scene questioning. *State v. Brown*, 176 N.W.2d 180, 182 (Iowa 1970). To determine whether a person is in custody, the relevant inquiry is "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 336 (1984). The court must determine whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279 (1983).

Turning to the facts here, we hold that the defendant was "in custody" when he was placed in the police car and taken to the station. He continued to be in custody until he was allowed to leave after the taped interview session. The defendant did not voluntarily go to the station. He was told by Soderquist they were going to take him to the station for further questioning. He was not allowed to have a friend accompany him. Once at the station, the defend-

ant was questioned almost continuously and was not allowed to leave, although he attempted to do so and was told to remain in the office. Further evidence of the custodial nature of the questioning is the police's refusal to let friends see the defendant while he was at the station. It is also clear the defendant was not read his *Miranda* rights at any time after he was placed in the police car and taken to the station.

Statements obtained in violation of *Miranda* must be excluded, and therefore, we hold that any statements made by the defendant en route to the station and at the station, including the taped interview, must be suppressed. However, any statements that were made spontaneously by the defendant are not included. *See State v. Matlock*, 289 N.W.2d 625, 628 (Iowa 1980).

We now address the issue of whether the defendant's consent to the search and seizure of his clothing and the testing of his hands are interrogation for *Miranda* purposes. The defendant argues that a request for consent to search is the functional equivalent of express questioning for *Miranda* purposes and the physical evidence obtained must be suppressed.

Interrogation for *Miranda* purposes is defined as not only express questioning, but as words or actions that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 308 (1980). A majority of the courts have determined that a request for consent to search is not interrogation for *Miranda* purposes because consent is not an incriminating statement. *See United States v. Cherry*, 794 F.2d 201 (5th Cir.1986); *Cody v. Solem*, 755 F.2d 1323 (8th Cir.1985);

*United States v. Ritter*, 752 F.2d 435 (9th Cir.1985); *Hubbard v. Jeffes*, 653 F.2d 99 (3d Cir.1981); *but see Kreijanovsky v. State*, 706 P.2d 541 (Okla.Crim.App.1985).

These cases make it clear that consent is not an incriminating statement and a *Miranda* violation will not vitiate an otherwise voluntary consent. *Cherry*, 794 F.2d at 207–08; *Solem*, 755 F.2d at 1330; *Ritter*, 752 F.2d at 439–39; *Hubbard*, 653 F.2d at 103. We find the rationale of these cases persuasive and hold that the district court erred in suppressing the physical evidence obtained from the defendant's consent. There was no *Miranda* violation when the request was made and the only question remaining concerns the voluntariness of the consent.

We decline to address the issue of whether the defendant's consent to the search was voluntary. We do so because the district court did not make a factual determination on the issue. The district court suppressed the evidence as a matter of law due to a *Miranda* violation. The issue therefore remains unresolved and we give no indication in this opinion on the resolution of that issue.

The judgment of the district court is reversed. This case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

SCHLEGEL, J., takes no part.