**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0499-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CARLO TACCETTA,

    Defendant-Appellant.

_____

Argued September 21, 2020 – Decided October 25, 2021

Before Judges Messano, Suter and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 15-10-0150.

Marco A. Laracca argued the cause for appellant (Bio & Laracca, PC, attorneys; Marco A. Laracca, of counsel and on the briefs).

Daniel Finkelstein, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Daniel Finkelstein, of counsel and on the brief).

The opinion of the court was delivered by

SMITH, J.A.D.

I.

Defendant Carlo Taccetta was charged on October 23, 2015, with possession with intent to distribute a controlled dangerous substance, possession of a controlled dangerous substance, and conspiracy. He moved to suppress evidence seized during his arrest, and the suppression hearing took place on December 5, 2018. Detective Sergeant First Class Thomas Kelshaw testified at the hearing.

At a location outside New Jersey, a confidential informant placed four large garbage bags containing sixty-five pounds of marijuana into defendant's truck. Det. Kelshaw and his team maintained constant surveillance on defendant during the exchange and followed him to a business parking lot in New Jersey. Once defendant entered the parking lot, Det. Kelshaw's team conducted a motor vehicle stop. Multiple officers were present at the stop, including officers from the New Jersey State Police and the federal Drug Enforcement Agency High Intensity Drug Trafficking Area (HIDTA) team. Det. Kelshaw testified defendant was not free to leave the scene. The officers informed defendant why

A-0499-19

he was being stopped and asked him to exit the vehicle. Det. Kelshaw then asked defendant for consent to search the truck.

Det. Kelshaw testified about his routine procedure for obtaining property owners' signatures on a consent to search form. Kelshaw first read it to the owners, then had them read it back to him. He informed them they could refuse consent to search. Then, consenting owners were instructed to check a box on the form giving consent if they wished to do so. Consenting property owners could waive their presence at the search by checking another box. Finally, the owners signed the form. The language on the form above the signature line read as follows:

> I further authorize the above member of the New Jersey State Police to remove and search any letters, documents, papers, materials, or other property, which is considered pertinent to the investigation, provided that I am subsequently given a receipt for anything which is removed. I've knowingly and voluntarily given my written consent to search described above. I've been advised by Detective One Tom Kelshaw, Badge Number 6231 and fully understand that I've the right to refuse giving my consent to search and may depart[,] no other reason exists for detai[n]ing me. I've been further advised I may withdraw my consent any time for any reason and I have the right to be present during the search at a location consistent with the safety of all persons present.

Defendant asked Det. Kelshaw for permission to call his attorney before consenting to any searches, and the detective assented. Defendant was unsuccessful twice in reaching his lawyer by phone, and after defendant's second failed attempt, Det. Kelshaw asked defendant a second time for consent to search the vehicle. This time defendant consented, in writing, to three distinct property searches: his vehicle, his office, and a rented garage space. Kelshaw reviewed each consent form with defendant, who then gave his written consent to search each property. The three searches were conducted simultaneously, but defendant was only present for the truck search. The police found the bags of marijuana in defendant's truck; however, the other searches revealed no contraband.

Det. Kelshaw testified that if defendant had refused consent, he would have requested a search warrant. Det. Kelshaw further testified that when defendant sought permission to call his attorney, he did not seek a search warrant. The detective posited two reasons. First, he was in the process of asking defendant for consent. Second, he did not ask defendant "any accusatory" questions or "interrog[ate] him regarding the marijuana . . . in the truck." On cross-examination, the detective conceded that officers present could have detained defendant, impounded the truck, and applied for a warrant.

4

The motion judge found Det. Kelshaw credible and determined there was a reasonable and articulable basis for the stop. The judge also found defendant was not in custody, and concluded that since there was no custodial interrogation, <u>Miranda</u> warnings were not triggered before the police asked for consent to search.[1] The judge found defendant knowingly and voluntarily signed the consent to search forms. Based on these findings, the judge denied defendant's suppression motion. Defendant pled guilty to second-degree possession with intent to distribute. He was sentenced to a five-year term of incarceration.

Defendant argues the following on appeal:

THE WARRANTLESS SEARCH OF MR. TACCETTA'S VEHICLE VIOLATED HIS RIGHT TO BE FREE FROM UNLAWFUL SEARCH AND SEIZURE GUARANTEED BY THE NEW JERSEY AND UNITED STATES CONSTITUTIONS

a. The trial court erred in denying the motion to suppress because Mr. Taccetta invoking his right to counsel after officers requested consent was in and of itself a "no" as to consent, so any evidence seized as a result of his consent is subject to the exclusionary rule.

b. The trial court erred in denying the motion to suppress because Mr. Taccetta's

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

consent was a result of coercion, so any evidence seized as a result of his consent is subject to the exclusionary rule.

## II.

"Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). An appellate court should not disturb a trial court's findings unless "they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). "Those findings warrant particular deference when they are substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Rockford, 213 N.J. 424, 440 (2013) (alteration in original) (citations omitted). "An appellate court owes no deference, however, to 'conclusions of law made by lower courts in suppression decisions'" and reviews such decisions de novo. A.M., 237 N.J. at 396 (quoting State v. Boone, 232 N.J. 417, 426 (2017)).

A-0499-19

## A. Custody

We first review fundamental principles regarding what constitutes custody for purposes of Miranda. The determination of whether a person was in custody is an objective one, independent of "'the subjective views harbored by either the interrogating officers or the person being questioned.'" State v. O'Neal, 190 N.J. 601, 615 (2007) (quoting Stansbury v. California, 511 U.S. 318, 323 (1994)). Judicial assessment of whether a suspect has been placed in custody is a fact-sensitive question. The issue must be considered using "a case-by-case approach," in which the totality of the circumstances is examined. State v. Stott, 171 N.J. 343, 364-65 (2002) (citation omitted). Custody does "not necessitate a formal arrest, nor does it require physical restraint in a police station, nor the application of handcuffs, and may occur in a suspect's home or a public place other than a police station." Id. at 175 (citations omitted). "The critical determinant of custody is whether there has been a significant deprivation of the suspect's freedom of action based on the objective circumstances, including the time and place of the interrogation, the status of the interrogator, the status of the suspect, and other such factors." State v. P.Z., 152 N.J. 86, 103 (1997) (citations omitted).

A-0499-19

The record shows an obvious and significant deprivation of defendant's freedom of action when he was stopped by the police. The team was aware defendant possessed four large trash bags of marijuana he obtained from a confidential informant. The officers were positioned to simultaneously search defendant's car, place of business, and his home once they received consent or, if needed, a warrant. While Det. Kelshaw posed no questions other than a request for consent to search his property, nonetheless defendant was not free to leave. The record shows that defendant was in custody, and we disagree with the motion judge to the extent the judge found otherwise.

## B. Interrogation

Having found that defendant was in custody, we turn to the question of whether Det. Kelshaw's request for consent to search was custodial interrogation for purposes of the Fifth Amendment, thereby triggering defendant's Miranda rights. We look to both state and federal precedent for guidance on the question of whether a request for consent to search when a suspect is in custody constitutes interrogation for purposes of Miranda.

"The privilege against self-incrimination, as set forth in the Fifth Amendment to the United States Constitution, is one of the most important protections of the criminal law." State v. Presha, 163 N.J. 304, 312 (2000)

A-0499-19

(citations omitted); U.S. Const. amend. V. In general, Miranda "warnings must be given before a suspect's statement made during custodial interrogation [may] be admitted in evidence." Dickerson v. United States, 530 U.S. 428, 431-32 (2000). The Miranda Court defined 'custodial interrogation' as questioning initiated by law enforcement 'after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" O'Neal, 190 N.J. at 615 (quoting Miranda, 384 U.S. at 444).

> The absence of Miranda warnings does not vitiate consent to a seizure of personal property, because the Miranda protections are addressed to constitutional rights that are distinct from Fourth Amendment rights. Solicitude for individual privacy is the central thrust of the Fourth Amendment . . . Privacy rights must be balanced, however, against the interest of the community "in encouraging consent [to a search], for the resulting search may yield necessary evidence of the solution and prosecution of crime, evidence that may insure that a wholly innocent person is not wrongfully charged with a criminal offense."
>
> [State v. Chappee, 211 N.J. Super. 321, 333-34 (App. Div. 1986) (citations omitted) (quoting Hubbard v. Jeffes, 653 F.2d 99, 101-102 (3d Cir. 1981)).]

A statement of consent to search by the person in custody is scrutinized under the Fourth Amendment, not the Fifth Amendment:

> In a [F]ifth [A]mendment context a defendant's statements, in and of themselves, present the potential constitutional evil. For purposes of the [F]ourth

[A]mendment . . . it is an unreasonable search that is to be condemned, not the use of the defendant's statements proving consent to a search. A search and seizure produces real and physical evidence, not self-incriminating evidence. Our task under the [F]ourth [A]mendment is to test the reasonableness of a search and exclude evidence procured unreasonably. . . . Therefore, Miranda's ratio decidendi which was enunciated to strengthen the [F]ifth [A]mendment's function in preserving the integrity of our criminal trials should not be superimposed ipso facto to the wholly different considerations in [F]ourth [A]mendment analysis.

[United States v. Stevens, 487 F.3d 232, 242-43 (5th Cir. 2007) (citation omitted) (superseded on other grounds as stated in United States v. Vasquez, 899 F.3d 363, 372 (5th Cir. 2018)).]

In addition to the Fifth Circuit, other circuits have addressed this issue and concluded that where officers fail to Mirandize detainees before obtaining a valid consent to search, the items seized during the search are admissible. See United States v. Hidalgo, 7 F.3d 1566, 1568 (11th Cir. 1993) (concluding that defendant's consent to search was valid even though it was obtained after law enforcement officers read defendant his Miranda rights and defendant had invoked his right to remain silent. The court found that "a consent to search is not an incriminating statement" and thus not in violation of Miranda and its progeny); United States v. McClellan, 165 F.3d 535, 544 (7th Cir. 1999) (holding that consent to search given after the Miranda invocation of right to

A-0499-19

counsel, and fruits of that search, need not be suppressed. The court reasoned that "consent to search is not an interrogation within the meaning of <u>Miranda</u> because the giving of consent is not a self-incriminating statement."); <u>United States v. Payne</u>, 119 F.3d 637, 643-44 (8th Cir. 1997) ("We have never held that a request to search must be preceded by <u>Miranda</u> warnings or that a lack of <u>Miranda</u> warnings invalidates a consent to search.").

The record shows that defendant was in custody when Det. Kershaw twice asked defendant for permission to search his truck. Defendant's valid consent is not an incriminating statement under <u>Miranda</u>. <u>McClellan</u>, 165 F.3d at 545. The resultant seizure of the marijuana produced "real and physical evidence, not self-incriminating evidence" which could violate the <u>Miranda</u> tenets. <u>Stevens</u>, 487 F.3d at 243.

Because Det. Kershaw's request for consent to search implicates Fourth Amendment considerations, such as safeguarding privacy and preventing unreasonable seizures, it cannot be considered an interrogation for purposes of the Fifth Amendment, which is designed to "preserv[e] the integrity of our criminal trials . . . ." <u>Ibid.</u>

11

A-0499-19

## C. Voluntariness of Defendant's Consent

Individuals are protected from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution. U.S. Const. amend. IV; N.J. Const., art. I, 7. While "[w]arrantless seizures and searches are presumptively invalid as contrary to the United States and the New Jersey Constitutions[,]" there are a "few well-delineated exceptions to the warrant requirement[,]" including validly obtained consent to search. State v. Pineiro, 181 N.J. 13, 19 (2004) (first citing State v. Patino, 83 N.J. 1, 7 (1980); and then quoting State v. Md., 167 N.J. 471, 482 (2001)). "Implicit in the very nature of the term 'consent' is the requirement of voluntariness." State v. King, 44 N.J. 346, 352 (1965). Accordingly, "consent must be 'unequivocal and specific' and 'freely and intelligently given.'" Ibid. (quoting Judd v. United States, 190 F.2d 649, 651 (D.C. Cir. 1951)).

In King, the Supreme Court listed the following non-exhaustive factors tending to indicate coerced consent:

> (1) that consent was made by an individual already arrested . . .; (2) that consent was obtained despite a denial of guilt . . .; (3) that consent was obtained only after the accused had refused initial requests for consent to search . . .; (4) that consent was given where the subsequent search resulted in a seizure of contraband which the accused must have known would be

discovered . . .; and (5) that consent was given while the defendant was handcuffed . . . .

[Id. at 352-53 (citations omitted).]

The King court also listed the following opposing factors suggesting that a defendant's consent was voluntary:

> (1) that consent was given where the accused had reason to believe that the police would find no contraband . . . ; (2) that the defendant admitted his guilt before consent . . . ; [and] (3) that the defendant affirmatively assisted the police officers . . . ."

[Id. at 353 (citations omitted).]

The Court, however, acknowledged that "[e]very case necessarily depends upon its own facts," and that "the existence or absence of one or more of the above factors is not determinative of the issue." Ibid.

Thereafter, in State v. Johnson, 68 N.J. 349, 353-54 (1975), our Supreme Court held that "where the State seeks to justify a search on the basis of consent[,]" an "essential element" of its burden to show that consent was voluntary "is knowledge of the right to refuse consent." The Johnson court, however, did not require the police "to advise the person of his right to refuse to consent to the search" in a "non-custodial situation." Id. at 354. Rather, it merely required the State to demonstrate "knowledge on the part of the person involved that he had a choice in the matter." Ibid.

13

In State v. Carty, 170 N.J. 632, 646 (2002), the court noted that "the Johnson standard has not been effective in protecting our citizens' interest against unreasonable intrusions when it comes to suspicionless consent searches following valid motor vehicle stops." The Carty court explained that "consent searches following valid motor vehicle stops are either not voluntary because people feel compelled to consent for various reasons, or are not reasonable because of the detention associated with obtaining and executing the consent search." Ibid. Accordingly, it "expand[ed] the Johnson . . . standard and [held] that unless there is a reasonable and articulable basis beyond the initial valid motor vehicle stop to continue the detention after completion of the valid traffic stop, any further detention to effectuate a consent search is unconstitutional." Id. at 647.

Defendant argues that the three consents to search his property he signed were not voluntary and that the trial judge erred in denying his motion to suppress. We recognize two King factors extant in the record which indicate coerced consent. First, defendant clearly knew a search of his truck would reveal the bags of marijuana he obtained from the confidential informant. Second, defendant gave written consent to search his truck only after twice requesting to speak to his attorney. Only after the failed second attempt did

14

defendant consent to the searches of his truck and other property. However, each consent case is fact dependent, and "the existence or absence of one or more of the . . . factors is not determinative of the issue." King, 44 N.J. at 353. The factors are simply "guideposts to aid a trial judge in arriving at [their] conclusion . . . ." Ibid.

Det. Kelshaw read aloud the consent form to defendant three times. The consent to search form included language reminding property owners of their right to refuse the search. The detective testified that if a subject of an investigation states that he does not want to sign the consent for search form, he would treat that statement as a refusal and obtain a search warrant. Knowing the police would find drug contraband, defendant tried unsuccessfully to contact his attorney twice, and then elected to give written consent to search his truck and his other property. Defendant never stated specifically that he did not consent to the searches, nor did he specifically state that he still wished to speak to his attorney. We find there is sufficient credible evidence in the record to support the trial judge's finding that defendant's consent was knowing, intelligent and voluntary "despite the presence of . . . potentially coercive King factors." State v. Hagins, 233 N.J. 30, 43 (2018).

## D. Right to Counsel

Our federal and state constitution both guarantee the right to counsel in a criminal prosecution. U.S. Const. amend. VI; N.J. Const. art. I, 10. "[T]he right to counsel 'is triggered when "adversary judicial proceedings have been initiated."'" State v. A.G.D., 178 N.J. 56, 63 (2003) (first quoting State v. Sanchez, 129 N.J. 261, 265 (1992); and then quoting Kirby v. Illinois, 406 U.S. 682, 688 (1972)). It is undisputed that an "[i]ndictment triggers the onset of the formal adversarial judicial process." State v. Wint, 236 N.J. 174, 203 (2018); see also Kirby, 406 U.S. at 688-89.

To determine whether an individual has invoked his or her right to counsel, our courts employ a "totality of the circumstances approach that focuses on the reasonable interpretation of [the] defendant's words and behaviors." State v. Diaz-Bridges, 208 N.J. 544, 564 (2011), rev'd on other grounds, 229 N.J. 360 (2017).

> [Should a suspect's] words amount to even an ambiguous request for counsel, the questioning must cease, although clarification is permitted; if the statements are so ambiguous that they cannot be understood to be the assertion of a right, clarification is not only permitted but needed.
>
> [State v. Alston, 204 N.J. 614, 624 (2011).]

In responding to an ambiguous statement, the officer must limit himself or herself to clarification, "not questions that operate to[] delay, confuse, or burden the suspect in his assertion of his rights." State v. Johnson, 120 N.J. 263, 283 (1990) (internal quotation marks and citation omitted).

Defendant contends that he exercised his right to counsel when he asked Det. Kelshaw for permission to call his attorney. Defendant further argues that his request to call his attorney should have been considered a "no" by the trial judge regarding to consent to search. When we examine the defendant's words and actions in the totality of the circumstances, we find that his two requests to call his attorney did not trigger his right to counsel during the stop. The defendant had been stopped by the police, and both parties knew contraband was in the truck. However, the matter was in the investigative phase, and no adversarial judicial proceeding had commenced. Det. Kelshaw granted defendant's request not once, but twice, however, the defendant was unsuccessful in reaching his attorney. After failing to reach his attorney on the second attempt, defendant consented, in writing, to the searches. The sole request posed by the detective, twice, was whether the police could obtain defendant's consent to search from the defendant. The detective posed questions that implicated defendant's Fourth Amendment rights, not Sixth Amendment

rights.  Under the totality of the circumstances, we find nothing in the record which triggered the right to counsel.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0499-19